*483 OPINION OF THE COURT
Per Curiam.
At issue on this appeal is the constitutionality of chapter 773 of the Laws of 1989 (as amended by L 1990, ch 17), a special law that prescribes a procedure for determining Staten Islanders’ interest in secession from New York City, and the basis on which they would wish such separation to be accomplished. We conclude that chapter 773 is not an "act in relation to the property, affairs or government” of New York City (NY Const, art IX, §2 [b] [2]) requiring a home rule message under the State Constitution.
Chapter 773 requires that, in the next general election, voters of the Borough of Staten Island, one of New York City’s five boroughs, be asked the following question: "Shall a charter commission to provide for the separation of the borough of Staten Island from the city of New York and for the establishment of the city of Staten Island be created?” If a majority answers yes, a commission composed only of Staten Island residents and legislators will be organized to draft a proposed charter and consider any subject it deems relevant to the organization of a new City of Staten Island. The law further specifies that, within roughly two years, this commission must submit a proposed charter to the Governor, the temporary President of the Senate, the Speaker of the Assembly and the President of the Borough of Staten Island, and must hold public hearings throughout Staten Island for at least six months thereafter.
The charter commission may, in its discretion, then submit to Staten Island voters the question whether to adopt the proposed charter and, if not, whether the commission should continue, in order to redraft a charter proposal. If Staten Island voters answer yes, the charter is "adopted,” and the commission must submit proposed legislation enabling Staten Island to separate from New York City. If they answer no, the commission continues briefly in order to consider an alternative proposed charter for the City of Staten Island; in the event of a second negative vote, the commission is to dissolve.
Chapter 773 further contemplates the appointment of three *484 "advisory committees” with five members each, to study and report on the creation of school districts, civil service rights and retirement benefits, and tax and finance matters. These committees are also charged with responsibility for submitting proposed legislation to implement their recommendations. An additional commission of State legislators from Staten Island is to be organized by the charter commission to apportion any local legislative body established by the proposed charter.
All committees and commissions are to be named without input from the other boroughs of New York City, with a single exception. Appointment of one member of the civil service rights and retirements benefits committee is to be made on the recommendation of the Mayor of the City of New York. Thus, as chapter 773 has been designed and formulated, upon completion of the referenda, hearing and drafting processes, what the Legislature will have is the view of Staten Islanders as to whether they desire separation from New York City, and the basis on which they would see it accomplished.
Significantly, as was made explicit by later amendment to chapter 773, no act or proposal of the various Staten Island committees or commissions can have the force of law. The charter, or alternative charter, for the City of Staten Island can become law only if the Legislature enacts legislation enabling Staten Island to disengage and separate from the City of New York. The law specifically directs that until such time, "the borough of Staten Island shall remain a part of the city of New York.” (L 1990, ch 17.)
Upon New York City’s challenge to the constitutionality of chapter 773, Supreme Court granted the State’s cross motion for summary judgment and declared the special law constitutional, holding that the State has plenary power to change municipal boundaries without home rule constraints (NY Const, art IX, § 2 [a]). The Appellate Division affirmed, agreeing that the State’s plenary power to create and organize local governments makes municipal boundaries a matter of State concern, not subject to home rule. Two concurring Justices upheld the law because it was "advisory only” and therefore, without effect on the property, affairs or government of New York City.
We now affirm, but on different grounds. In particular, we expressly decline to decide as unnecessary and premature whether genuine secession legislation, if ever it were to come before the Legislature, would require a home rule message.
*485 We preface our analysis by noting the familiar proposition that enactments of the Legislature, a co-equal branch of government, are presumed to be constitutional; those who challenge statutes bear a heavy burden of proving unconstitutionality beyond a reasonable doubt (see, e.g., Elmwood-Utica Houses v Buffalo Sewer Auth., 65 NY2d 489, 495). Appellant, the City of New York, has not satisfied that burden.
The City makes a plausible argument that chapter 773 is not "advisory only.” A State-sponsored referendum merely soliciting the interest of Staten Islanders in secession might, for example, be deemed advisory only, because by definition it has no effect on the property, affairs or government of New York City, and therefore outside the home rule requirement. Chapter 773, however, does more than that. It authorizes the commitment of public funds and other public resources, potentially extending over a period of several years, to conduct studies, hold hearings and submit legislation that would effectuate Staten Island’s separation from the City of New York if the Legislature ever passed such a law and the Governor ever signed it.[1] Chapter 773 is in this respect more than "advisory only,” and is surely ripe for review (compare, Cuomo v Long Is. Light. Co., 71 NY2d 349).
That conclusion does not, however, answer the dispositive question whether the special law is an "act in relation to the property, affairs or government” of New York City requiring a home rule message under article IX, § 2 (b) (2) of the State Constitution. By their very nature, special laws ordinarily will have an effect on the subject locality. However, not every special law in and of itself requires a home rule message, as the effect may be at most incidental, not a direct impact on the property, affairs or government of that entity. "The intent of these provisions of the Constitution was to provide some measure of protection to a city from possible danger of ill-considered interference by the Legislature in its local affairs.” (City of New York v Village of Lawrence, 250 NY 429, 439; see also, Hyman, Home Rule in New York 1941-1965 Retrospect and Prospect, 15 Buffalo L Rev 335, 337-338.)
Here we discern no State interference in New York City property, affairs or government, and we therefore need not *486 reach the next step of determining whether there is any substantial State interest in the matter (see, Adler v Deegan, 251 NY 467, 484 [Cardozo, Ch. J., concurring]).[2] Chapter 773 does not authorize secession; it does not authorize the voters of Staten Island to decide the secession issue; it does not initiate secession, or commit the State to support it; it does not represent any relinquishment by the Legislature of any power it may have with respect to secession; and it in no way circumscribes whatever protections exist in the State Constitution home rule provision with respect to an act formally triggering secession.
Indeed, rather than any direct effect of chapter 773 on the property, affairs or government of New York City, the impact of the law as the City portrays it is either wholly speculative, or simply the anticipated response to Staten Island’s already publicized interest in secession. In the category of speculative, for example, are the City’s references to the loss of population, acreage and investment in Staten Island’s infrastructure, none of which could result from the present legislation. Likewise, any anticipated uncertainties in City planning or financing are not the direct consequence of chapter 773, which commits to no binding law of any sort; Staten Island’s expressed interest in secession after Morris v Board of Estimate (707 F2d 686, affd 489 US 688) itself suggested planning for that contingency even without chapter 773.
Nor does the dissent add any material consideration to the factors relied on by the City (see, dissenting opn, at 489-490). That New York City may choose to incur expense in a desire to track the various Staten Island processes can hardly be deemed the State’s intrusion into New York City’s property, affairs or government; similarly, commission authorization to "request and receive” assistance is not tantamount to license to requisition resources or commandeer City agéncies, and plainly does not constitute "open-ended” or "unbridled” intrusion into City affairs (dissenting opn, at 490).
The City’s equal protection argument is also unavailing. Even in voter classification, a State is not prohibited from recognizing the distinctive interests of the residents of its political subdivisions (see, e.g., Town of Lockport v Citizens for *487 Community Action, 430 US 259, 268-269). The legislative choice to allow Staten Island voters to express their views as to whether, and how, they might wish to separate from New York City — while affording them no unilateral right to do so— is a reasonable classification based on the distinct interest of that subdivision of the State.
Finally, our difference with the dissent may be summarized as follows. First, while fully mindful of the importance of home rule, we are sensitive as well to another fundamental precept of government: that, whether or not we endorse their wisdom, acts of the Legislature are presumptively valid and cannot be overturned unless proved unconstitutional beyond a reasonable doubt. Second, however often repeated, merely saying that chapter 773 "deeply” or "profoundly” intrudes into New York City property, affairs and government does not make it so. The virtual exclusivity of Staten Islanders in the process marks chapter 773 for what it is — not as a procedure aimed at dividing New York City without the voice of its other boroughs but as a procedure that allows Staten Island to explore its publicized interest in secession, stripped of any force without further act of the Legislature.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

. Citation to the annexation provisions of the State Constitution (NY Const, art IX, § 1 [d]; dissenting opn, at 491) serves only to underscore that were annexation or the actual alteration of boundaries in issue, this would be a different case.

. Contrary to the dissent (dissenting opn, at 488), the argument that the legislation is legally immaterial was most assuredly advanced by the State. The fact that the court offers as a sole reason for affirmance that there is no intrusion into New York City property, affairs or government is hardly a criticism: that is the necessary first step in any home rule analysis.