OPINION OF THE COURT
Louis B. York, J.
The City of New York, Rudolph W. Giuliani as Mayor of the City of New York, the Council of the City of New York, Robert W. Walsh as Executive Director of the 14th Street-Union Square District Management Association, Inc. and the Fifth Avenue Association Business Improvement District, Inc. (collectively referred to as the City) move for summary judgment declaring section 206 of chapter 83 of the Laws of 1995 (section 206) unconstitutional and enjoining its enforcement.
Defendants, the State of New York and the New York City Criminal Court, and the Judges thereof by Joan B. Carey, as Administrative Judge of the New York City Criminal Court (collectively referred to as the State), cross-move for summary judgment dismissing the City’s complaint on grounds that it fails to state a cause of action.
Procedural Background
On September 29, 1995, this court granted the City’s request for a temporary restraining order (the TRO) prohibiting the State from enforcing section 206 pending the City’s application to permanently enjoin enforcement of the statute. The State then appealed from this court’s TRO, resulting in an automatic stay of the TRO. The First Department denied the City’s request to vacate the stay on October 2, 1995.
On October 3, 1995, the parties stipulated that defendants agreed to withdraw that part of the State’s notice of appeal *752 that affects "jurisdiction over all offenses, and lesser included charges, resulting in the issuance of a summons, or the effectuation of an arrest, on or before October 2, 1995, charging a violation of the New York City Administrative Code over which the New York City Criminal Court heretofore exercised jurisdiction immediately prior to the effective date of § 206 of Chapter 83 of the Laws of 1995.” The practical effect of this is that the New York City Criminal Court has continued to hear and determine the criminal proceedings involving the underlying summonses and arrests for these proceedings.
The Statute
The New York State Legislature (the Legislature) enacted section 206 on June 20, 1995. Section 206 amends section 31 of the New York City Criminal Court Act (section 31). The amendment is part of an omnibus act providing for several budgetary matters which impact upon the financial plan for the State’s fiscal year commencing April 1, 1995 (see, Bill Jacket, L 1995, ch 83). Section 31, as amended, states:
"Jurisdiction * * * The court and the judges thereof, except as otherwise provided in this act, shall have jurisdiction with respect to crimes and offenses committed within the city of New York, as follows:
"(1) To hear, try, and determine all charges of misdemeanor, except charges of libel;
"(2) To hear, try, and determine all offenses of a grade less than misdemeanor.
"Notwithstanding the foregoing, beginning October first, nineteen hundred ninety-five, the court shall not exercise jurisdiction over any charge of a violation of the administrative code of the city of New York, except a violation that is classified as a misdemeanor. Effective on such date, disposition of such nonmisdemeanor charges shall be as provided by the city of New York; provided, further, that notwithstanding any other provision of law, no person subject to any such charges may be sentenced to a term of imprisonment upon being found guilty thereof and provided further that any fine or penalty imposed by the city of New York for a violation of the administrative code of the city of New York shall be a civil penalty” (emphasis added).
Arguments
The City challenges the constitutionality of the amendment to section 31 on two grounds. First, according to the City, the *753 amendment divests the New York City Criminal Court of jurisdiction over violations of the Administrative Code of the City of New York (the Administrative Code). As the jurisdiction of the New York City Criminal Court is constitutionally mandated by NY Constitution, article VI, § 15 (c), which vests the court with jurisdiction over crimes and other violations of law, other than those prosecuted by indictment, the Legislature can only restrict the New York City Criminal Court’s jurisdiction by amending the New York Constitution (Constitution). As the Legislature enacted the amendment to section 31 without amending the Constitution, section 31, as enacted, is unconstitutional.
Second, the amendment to section 31 is a "special law” that affects the property, affairs or government of the City of New York because it strips the City Council of its authority pursuant to Municipal Home Rule Law § 10 (4) (b), General City Law § 20 (22), New York City Charter § 28 (b) and article IX, § 2 (c) (2) of the NY Constitution to enact by local law any Administrative Code provisions for which criminal sanctions of a grade less than misdemeanor may be sought. Because this special law affects only New York City, the State Legislature was required to follow the home rule procedures found in article IX, § 2 (b) (2) of the NY Constitution. The City did not submit the required home rule message to the Legislature requesting the enactment of the amendment to section 31. Thus, according to the City, the enactment of the amendment to section 31 without a home rule message[1] violates article IX and is unconstitutional.
The test used by the City in determining that a home rule message was needed is a balancing test: the City’s interest must be balanced against the State’s concern in the amendment to section 31, which must be a substantial concern. The City portrays its own interest as quite substantial: the legislation intrudes into local legislative powers, the City will lose momentum in its anticrime initiative and hundreds of thousands of dollars in fine and penalty revenues; and there will be a reduction in the quality of life for New Yorkers. The City characterizes the State’s interest, on the other hand, as *754 insubstantial, the saving of only $1 million this year and an estimated $2 million each following year. Thus, under the City’s analysis the City’s interest outweighs that of the State and a home rule message is needed.
The State contends that the amendment to section 31 does not divest the New York City Criminal Court of its jurisdiction as established by NY Constitution article VI, but rather, decriminalizes violations found in the Administrative Code.
The State asserts that the violations of the Administrative Code are now civil violations, that for purposes of article VI, § 15 (c) of the NY Constitution the violations are no longer "other violations of law” but are civil violations considered to be "such other actions and proceedings”. The Legislature has discretion to remove these civil violations from the New York City Criminal Court to an administrative tribunal. According to the State, the Legislature’s creation of "expressly designated civil penalties” and their implementation through an administrative process does not violate article VI, § 15 (c) of the NY Constitution.
Regarding the City’s home rule challenge, the State concedes that the amendment to section 31 is a "special law”. The State argues that it has authority to legislate in the arena where State and City concerns overlap when the subject of the State’s concern is substantially involved.[2] Here, the State’s "very substantial” interest is in saving the State $1 million in the year 1995 through 1996 and $2 million each following year, and, more importantly, affording relief to the severely overburdened New York City Criminal Court. Despite the City’s interest in creating and enforcing violations of the Administrative Code to protect public safety and welfare, the State asserts that no home rule message is required.
Analysis
Legislative enactments are presumed constitutional, and such presumption will be rebutted only when the legislation is proven beyond a reasonable doubt to be in conflict with the Constitution (City of New York v State of New York, 76 NY2d 479, 485 [1990]). The Supreme Court, as a court of original jurisdiction, should avoid declaring an act of the Legislature to be unconstitutional unless such a conclusion is inescapable or *755 where the invalidity of the statute is apparent on its face (see, Comiskey v Arlen, 55 AD2d 304, 307 [2d Dept 1976], affd 43 NY2d 696 [1977]). A lower court, however, is not precluded from determining the constitutionality of a statute where its invalidity is apparent on its face (Commissioner of Social Servs. [Foreman] v Milien, 156 Misc 2d 527, 529-530 [Fam Ct, Rock-land County 1993]). This court should not evade its responsibility to reach constitutional questions (People v Smith, 160 Misc 2d 1070, 1071 [Just Ct, Dutchess County 1993]).
Adhering to these rules of construction, this court finds the amendment to section 31 unconstitutional. A plain reading of the amendment to section 31 reveals that the statute divests the New York City Criminal Court of jurisdiction mandated by article VI, § 15 (c) of the NY Constitution over "other violations of law”. The statute states that the New York City Criminal Court "shall not exercise jurisdiction over any charge of a violation of the administrative code of the city of New York, except a violation that is classified as a misdemeanor”. It is true that the Legislature has not restricted the City’s power to determine that offenses formerly characterized as violations may now be prosecuted as misdemeanors. This, however, does not detract from the clear import of the amendment to section 31 which is to divest jurisdiction of the New York City Criminal Court over criminal violations found in the Administrative Code.
On its face, the amendment to section 31 does much more than merely decriminalize certain quality of life offenses. The State contends that by enacting the amendment to section 31 the criminal violations are transformed into civil violations and, therefore, are no longer appropriately within the jurisdiction of the New York City Criminal Court. This is word play. The amendment to section 31, does not express an intent to decriminalize violations of the Administrative Code, but rather, divests the New York City Criminal Court of its jurisdiction over such offenses, which can only be accomplished by constitutional amendment.
That the New York City Criminal Court is to exercise jurisdiction over criminal violations of law, such as those found in the Administrative Code, is borne out by the history of NY Constitution, article VI, § 15 (c). At the time this provision was enacted, the two local criminal courts in the City of New York — the Magistrates’ Court and the Court of Special Sessions — were merged into a single court, the Criminal Court of the City of New York. At that time, the jurisdiction of the *756 Magistrates’ Court included offenses "of a grade less than a crime” (plaintiffs’ mem of law in support of its motion for a preliminary injunction, at 11, citing Kross and Grossman, Magistrates’ Courts of the City of New York). It is clear to this court that the phrase "other violations of law” was a direct reference to this jurisdiction of the Magistrates’ Court and was meant to preserve it.
Although the New York City Criminal Court has retained jurisdiction over misdemeanors and those violations found outside of the Administrative Code, the amendment to section 31 extracts from the court a category of offenses, criminal violations found in the Administrative Code, formerly within the court’s exclusive criminal jurisdiction. Thus, as drafted, the amendment to section 31 is unconstitutional.
Home Rule
The limitation, as contained in article IX, § 2 (b) (2) of the NY Constitution, upon the power of the Legislature to enact a special law in relation to the property, affairs or government of a locality applies only to special laws that directly concern the property, affairs or government of the locality and are "unrelated to a matter of proper concern to State government” (Matter of Town of Islip v Cuomo, 64 NY2d 50, 52 [1984]). The procedures required by article IX were "intended to afford localities protection from hasty and ill-considered legislative judgments” (Wombat Realty Corp. v State of New York, 41 NY2d 490, 492 [1977]).
In considering the City’s home rule challenge to the amendment to section 31, the City urges this court to balance the State’s interest against that of the City, and to allow this concededly special law to be passed without a home rule message only if the State’s concern is of sufficient importance to transcend the City’s interest (see, City of New York v State of New York, supra, 76 NY2d, at 490 [Hancock, Jr., J., dissenting], citing Wambat Realty Corp. v State of New York, 41 NY2d 490, supra). This court declines to balance State and local interests, but rather follows the trend of Court of Appeals decisions which adhere to Justice Cardozo’s dismissal of any "predominance” test as articulated in his concurring opinion in the leading home rule case Adler v Deegan (251 NY 467, 490 [1929] , rearg denied 252 NY 574, opn amended by 252 NY 615 [1930] ; see, Briffault, Voting Rights, Home Rule, and Metropolitan Governance; The Secession of Staten Island as a Case Study in the Dilemmas of Local Self-Determination, 92 Colum L Rev *757 775, 807-809 [1992] [discussing Judge Car doze’s concurring opinion in Adler v Deegan and rejection of balancing test]).
If the subject matter of the statute is of sufficient importance to the State generally to render it a proper subject of State legislation, the State may fully legislate notwithstanding the fact that the concern of the State may also directly touch upon the most basic of local interests (Matter of Town of Islip v Cuomo, supra, 64 NY2d, at 56-57). The first step of a home rule analysis is to see whether the legislation interferes in the property, affairs or government of the locality (City of New York v State of New York, supra, 76 NY2d, at 485-486, n 2). Here, the legislation interferes with City’s home rule power to provide for the enforcement of local laws and to prescribe that violations of such laws may be criminally penalized.
The next step in the analysis is to determine whether "there is any substantial State interest in the matter” (City of New York v State of New York, supra, 76 NY2d, at 486). The State passed the amendment to section 31 as a necessary step in implementing the executive budget. The enactment of the amendment should result in a $1 million general fund savings to the judiciary budget for 1995 through 1996 by eliminating positions in the New York City Criminal Court. The savings to the State of New York of $1 million this year and $2 million in future years can hardly be characterized as substantial in light of the State’s total annual budget or even that of the judiciary.[3]
The court also notes that the legislative leaders apparently focussed only upon the fact that this amendment was a cost-cutting measure, and, despite the clear language of the amendment, did not realize the impact that it would have upon the power of the New York City Criminal Court over violations of the Administrative Code.[4] As the State’s interest in the amendment to section 31 cannot be characterized as substantial, this court finds that the amendment to section 31 violates article IX, § 2 (b) (2) of the. NY Constitution.
*758 The parties are referred to the remedy provided by CPLR 5601 (b) (2) and may pursue an appeal directly to the Court of Appeals if so advised.
Accordingly, the City’s motion for summary judgment seeking declaratory and injunctive relief is granted. The State’s cross motion for summary judgment is denied.

. In New York City, the Legislature has power to act "in relation to the property, affairs or government of any local government only by general law, or by special law” only when a home rule message is sent: when a majority of the City Council and the Mayor are in agreement, or two thirds of the City Council without the Mayor’s agreement request the enactment of a special law (NY Const, art IX, § 2 [b] [2]).

. The Attorney-General argues that the State’s interest need not be "substantial” in the ordinary meaning of that term. Any actual element of State concern, even if vastly outweighed by the local interest, will obviate the need for a home rule message.

. The total budget for the New York State judiciary system for 1995-1996 is $1.115 billion. The total budget for the State of New York for 1995-1996 is $63.7 billion (plaintiffs’ reply mem of law, at 12, n 1).

. Both the Speaker of the New York State Assembly and the Majority Leader of the New York State Senate have stated that they believed the statute was a mere budgetary matter, and that the statute would be high on their list for repeal during the first week in January when the Legislature reconvenes (Krauss, State Legislators Agree to Restore Arrests for Minor Offenses, NY Times, Nov. 11, 1995, at 26, col 3).