[637 NYS2d 982]

In the Matter of ROBERT A. STRANIERE, Individually and as Assemblyman of the 61st Assembly District of New York, et al., Appellants, v SHELDON SILVER, as Speaker of the State Assembly, et al., Respondents.

Third Department, February 22, 1996

APPEARANCES OF COUNSEL

*Robert A. Straniere,* Albany, *pro se, Eric N. Vitaliano,* Albany, *pro se,* and *Raymond A. Fasano,* Staten Island, for Robert A. Stranier and others, appellants.

*Weil, Gotshal & Manges,* New York City *(Steven Alan Reiss, Katherine Oberlies* and *David Jason Lender* of counsel), for respondents.

## OPINION OF THE COURT

MERCURE, J.

At issue on this appeal is the fate of proposed legislation, introduced in 1994, providing for the secession of the Borough of Staten Island from the City of New York. It is necessary, however, to briefly review prior legislation concerning Staten Island secession.

In 1989, the State Legislature enacted a bill addressing the desire of the residents of Staten Island to secede from the City (*see,* L 1989, ch 773, amended by L 1990, ch 17 [hereinafter chapter 773]). Chapter 773 did not authorize secession, but rather prescribed a procedure designed to inform the Legislature as to the strength of the secessionist movement and the manner in which the residents of Staten Island would govern themselves if permitted to do so. If the voters of Staten Island demonstrated their commitment to secession by approving first a referendum on the issue and then a charter for the proposed City of Staten Island, chapter 773 provided that legislation enabling secession would be introduced. Both the secession referendum and the proposed charter were approved by Staten Island voters.

The City challenged the constitutionality of chapter 773, contending that it affected "the property, affairs or government" of the City (NY Const, art IX, § 2 [b] [2]) and therefore required a home rule message under the State Constitution (*see, City of New York v State of New York,* 158 AD2d 169, *affd* 76 NY2d 479). The First Department rejected the City's argument, holding that chapter 773 did not require a home rule message. Reasoning that the State's power to "create and organize local governments" is " 'plenary' " and thus not subject to home rule, the First Department then went further, finding that actual secession legislation, which the Court asserted would inevitably follow, would not require a home rule message either (*City of New York v State of New York, supra,* at 173). On appeal, the Court of Appeals affirmed but, finding it "unnecessary and premature" to address the issue, expressly

declined to determine whether genuine secession legislation would require a home rule message (*City of New York v State of New York*, 76 NY2d 479, 484, *supra*). The Court held that chapter 773 did not commit the State to support secession and "in no way circumscribes whatever protections exist in the State Constitution home rule provision with respect to an act formally triggering secession" (*supra*, at 486).

In 1994, petitioners introduced the actual secession legislation.[1] Respondent home rule counsel of the State Assembly determined that a home rule message from the City was required before the bill could be reported out of the Cities Committee. Respondent Speaker of the Assembly, who has been authorized by the Assembly to make home rule determinations on its behalf, adopted the determination of the home rule counsel and petitioners were accordingly notified.

Petitioners commenced this proceeding pursuant to CPLR article 78 seeking to annul respondents' determination as unconstitutional. Respondents moved to dismiss on the grounds that, *inter alia*, the proceeding is barred by the Speech or Debate Clause (NY Const, art III, § 11) and, alternatively, that petitioners' claims are not justiciable. Petitioners cross-moved for summary judgment. In a well-reasoned decision, Supreme Court granted respondents' motion and dismissed the petition with prejudice, as absolutely barred by the Speech or Debate Clause; the court did not reach the issue of justiciability. Petitioners appeal.[2]

We turn first to respondents' argument that this action is barred by the Speech or Debate Clause of the NY Constitution, which provides that "[f]or any speech or debate in either house of the legislature, the members shall not be questioned in any other place" (NY Const, art III, § 11). The Court of Appeals has construed this provision as providing "at least as much protec-

1. Although the secession bill at issue in this case, Assembly Bill No. 9662, lapsed when the 1994 session of the Assembly ended, the factors necessary to invoke the exception to the mootness doctrine exist (*see, Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714-715; *Matter of Campaign for Fiscal Equity v Marino*, 209 AD2d 80, 82, *revd on other grounds* 87 NY2d 235) and respondents do not contend otherwise.

2. In our view, this proceeding, although characterized as a challenge to the constitutionality of respondents' actions, actually alleges an erroneous application of a constitutional provision relating to the procedure by which legislation is enacted. As such, petitioners properly proceeded by way of a CPLR article 78 proceeding (*see*, Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7801:5, at 38-39; *see also, Matter of Voelckers v Guelli*, 58 NY2d 170, 176-177; *cf., Matter of Kovarsky v Housing & Dev. Admin.*, 31 NY2d 184, 191-192).

tion as the immunity granted by the comparable provision of the Federal Constitution" (*People v Ohrenstein*, 77 NY2d 38, 53). The fundamental purpose of the clause is to insure that the legislative function may be performed independently (*Eastland v United States Servicemen's Fund*, 421 US 491, 502; *Gravel v United States*, 408 US 606, 618). The United States Supreme Court has interpreted the Federal Speech or Debate Clause broadly to effectuate its purposes, holding that any acts by members of Congress or their aides within the performance of their legislative functions are beyond judicial scrutiny (*see, Gravel v United States, supra*, at 616, 624-625). The clause not only shields legislators from the consequences of litigation, but also protects them from the burden of defending themselves in court (*see, Powell v McCormack*, 395 US 486, 502-503; *Dombrowski v Eastland*, 387 US 82, 85).

The line separating protected from unprotected legislative activity is ultimately one between "purely legislative activities" and "political" matters (*United States v Brewster*, 408 US 501, 512; *accord*, Tribe, American Constitutional Law § 5-18, at 371 [2d ed]). Legislative activities include those acts that are: "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House" (*Gravel v United States, supra*, at 625). Thus, in addition to speeches on the floor of the House and debating, a range of activities, including voting, preparing committee reports and conducting committee hearings, are protected (*see, People v Ohrenstein*, 77 NY2d 38, 54, *supra*; Tribe, American Constitutional Law § 5-18, at 371 [2d ed]). The immunity does not extend, however, to constituent services, giving speeches in the community, issuing press releases or using staff to help the reelection campaigns of fellow party members (*see, People v Ohrenstein, supra*) or accepting a bribe even though the conduct relates to a legislative act (*see, United States v Brewster, supra*, at 526).

Petitioners argue that the determination at issue is not a legislative act for which respondents are entitled to protection. In the alternative, petitioners argue that incorrect home rule determinations are not in the sphere of legitimate legislative activity and that even if this Court decides that the Speech or Debate Clause bars this action as to respondents, the Court should nonetheless review the constitutionality of respondents' determination. We disagree.

First, the record establishes that home rule determinations of the type at issue here are part and parcel of the legislative process and are routinely made by the Speaker of the Assembly. The home rule counsel reviews each bill, including each amendment to existing legislation, and determines whether a home rule message from a local government is required. The home rule counsel's recommendations are conveyed to the Speaker, who makes the final determination. Where a home rule message is required, the home rule counsel notifies both the bill's sponsor and the chair of the committee to which the bill was referred. We therefore agree with Supreme Court that "the Speaker's decision to require a home rule message for the Secession Bill was an integral part of the legislative process, and thus a legislative act" for which respondents are immune by virtue of the Speech or Debate Clause (*see, Kessel v Purcell*, 119 Misc 2d 449). We reject petitioners' arguments that Speech or Debate Clause protection begins with the onset of committee deliberations. Many important legislative activities entitled to Speech or Debate Clause immunity, including the drafting of bills and the reference of bills to committee, occur prior to this stage of the legislative process. The line petitioners attempt to draw is arbitrary and unworkable and would permit a challenge to a legislator's introduction of a bill or the Speaker's decision as to the committee to which a bill should be referred.

Second, there is no merit to petitioners' argument that the Speech or Debate Clause does not shield erroneous determinations by legislators and their staffs (*see, Doe v McMillan*, 412 US 306, 312-313). The privilege would be virtually worthless if courts determining its applicability had to carefully examine the acts ostensibly shielded (*see*, Tribe, American Constitutional Law § 5-18, at 372 [2d ed]). Because "judgments of legality or constitutionality obviously involve 'questioning' of legislative acts, courts may not strip acts taken in the legislative process of their constitutional immunity by finding that the acts are substantively illegal or unconstitutional" (Tribe, American Constitutional Law § 5-18, at 372 [2d ed]). Moreover, there is no support in the record for petitioners' argument that the challenged determination was not made in conformance with the accepted procedure. Even if a violation of the Assembly's rules were demonstrated, such violation would not abrogate Speech or Debate Clause immunity (*see, Kilbourn v Thompson*, 103 US 168, 203).

Third, petitioners argue that even if the Speech or Debate Clause insulates respondents from this proceeding, this Court

can nevertheless review the constitutionality of their determination. Petitioners rely upon three United States Supreme Court cases wherein that Court dismissed actions as to members of Congress named as respondents, but proceeded to review the constitutionality of the underlying acts (*see, Powell v McCormack*, 395 US 486, *supra*; *Dombrowski v Eastland*, 387 US 82, *supra*; *Kilbourn v Thompson*, 103 US 168, *supra*). Their reliance is misplaced. In each of these cases at least one party respondent, who was not immune under the Speech or Debate Clause, remained after the legislators were dismissed from the case (*see, Kilbourn v Thompson, supra* [the arrest by the sergeant at arms was subject to judicial review because it was not essential to legislating]; *Dombrowski v Eastland, supra* [the committee counsel, charged with conspiracy with State officials to carry out an illegal seizure of records, was not protected]; *Powell v McCormack, supra* [Congressional employees, who infringed on Powell's rights through nonlegislative acts, e.g., refusing to grant him admission to the House chamber, were not immune from suit]). Judicial review must be limited to determining whether the action constitutes a legitimate legislative activity. Once a determination is made that the action is within the purview of legitimate legislative activity, the court's review must end.

We have considered petitioners' remaining arguments and find them either without merit or academic.

CARDONA, P. J., WHITE, PETERS and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, without costs.