Matter of Rochester Police Locust Club, Inc. v City of Rochester (2021 NY Slip Op 03787)





Matter of Rochester Police Locust Club, Inc. v City of Rochester


2021 NY Slip Op 03787


Decided on June 11, 2021


Appellate Division, Fourth Department


NeMoyer, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, NEMOYER, TROUTMAN, AND BANNISTER, JJ.


1239 CA 20-00826

[*1]IN THE MATTER OF ROCHESTER POLICE LOCUST CLUB, INC., MICHAEL MAZZEO AND KEVIN SIZER, PETITIONERS-PLAINTIFFS-RESPONDENTS,
v
CITY OF ROCHESTER, LOVELY A. WARREN, AS MAYOR OF THE CITY OF ROCHESTER, ET AL., RESPONDENTS-DEFENDANTS, AND COUNCIL OF CITY OF ROCHESTER, RESPONDENT-DEFENDANT-APPELLANT. 






EMERY CELLI BRINCKERHOFF & ABADY, LLP, NEW YORK CITY (ANDREW G. CELLI, JR., OF COUNSEL), FOR RESPONDENT-DEFENDANT-APPELLANT. 
TREVETT CRISTO P.C., ROCHESTER (DANIEL P. DEBOLT OF COUNSEL), FOR PETITIONERS-PLAINTIFFS-RESPONDENTS.
KEVIN R. BRYANT, CORPORATION COUNSEL, KINGSTON, FOR CITY OF KINGSTON, AMICUS CURIAE.
MICHAEL SISITZKY, NEW YORK CITY, FOR NEW YORK CIVIL LIBERTIES UNION FOUNDATION, AMICUS CURIAE.


NeMoyer, J.
 Appeal from a judgment (denominated order and judgment) of the Supreme Court, Monroe County (John J. Ark, J.), entered May 19, 2020 in a CPLR article 78 proceeding and declaratory judgment action. The judgment, among other things, declared invalid, void and unenforceable the "portions of Local Law No. 2 which authorize and empower the Police Accountability Board to conduct disciplinary hearings and discipline officers of the City of Rochester Police Department." 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by vacating the fourth decretal paragraph and as modified the judgment is affirmed without costs.
Opinion by NeMoyer, J.:
The Rochester City Charter has been amended to grant virtually all authority for disciplining police officers to a new entity called the "Police Accountability Board" (see Local Law No. 2 [2019] of the City of Rochester). The politics swirling around this provision are weighty and fraught, but its legality is not. Local Law No. 2 is invalid insofar as it takes police discipline outside the realm of collective bargaining.
FACTS
In 2019, Local Law No. 2 was adopted by respondent-defendant Council of City of Rochester (City Council) and approved by the voters at a referendum. Local Law No. 2 created the Police Accountability Board (PAB) as a body consisting of nine Rochester residents. Current and former Rochester police officers are permanently barred from serving on PAB, as are all immediate family members of a current or former Rochester police officer. Local Law No. 2 also bars the appointment of more than one PAB member that has, or is related to someone that has, any form of law enforcement experience.
Conversely, four PAB members must be appointed from a list compiled by an "Executive Committee" of 53 groups called the "Alliance." The constituent members of this "Alliance" are mostly unincorporated entities, but they also include certain political parties and specific religious organizations. Local Law No. 2 specifies no procedure for selecting the individual members of the "Executive Committee" through which the "Alliance" constructs its nominating list, nor is there any specified procedure for updating the constituent members of the "Alliance." Relatedly, Local Law No. 2 prohibits the removal of any PAB member without a majority vote of his or her fellow members.
Local Law No. 2 vests PAB with exclusive authority to conduct disciplinary hearings for police officers accused of misconduct and to decide whether the accused officer is guilty. The complainant, but not the accused officer, is granted a right to appeal certain rulings by a PAB panel to the full board. If PAB convicts an officer of misconduct, it imposes punishment. The Chief of Police (police chief or chief) is explicitly obligated by Local Law No. 2 to execute PAB's decreed discipline without reduction or reprieve. The only discretion retained by the police chief in disciplinary matters is the power to impose additional punishment above that imposed by PAB.
There is no dispute that the police-discipline process created by Local Law No. 2 was never subject to collective bargaining and is irreconcilable with the police-discipline process set forth in the governing collective bargaining agreement. Petitioners-plaintiffs (plaintiffs) — the Rochester police union, its president, and an individual Rochester police officer — therefore commenced this hybrid CPLR article 78 proceeding and declaratory judgment action against, among others, respondents-defendants City of Rochester (City), Lovely A. Warren as Mayor of the City of Rochester (Mayor), and the City Council. Insofar as relevant here, the petition (complaint) alleged that, by transferring virtually all disciplinary authority to PAB in the absence of collective bargaining and in contravention of the terms of the governing collective bargaining agreement, Local Law No. 2 violated the Taylor Law (Civil Service Law art 14). The complaint further alleged that Local Law No. 2 violated Civil Service Law § 75 and McKinney's Unconsolidated Laws of NY § 891 by empowering PAB to hear and adjudicate disciplinary charges against police officers. As a remedy, plaintiffs sought, inter alia, a declaration that Local Law No. 2 was invalid insofar as it transferred disciplinary authority to PAB.
Supreme Court agreed with plaintiffs and held that Local Law No. 2 violated the Taylor Law, Civil Service Law § 75, and Unconsolidated Laws § 891. The court therefore declared that "those portions of Local Law No. 2 which authorize and empower [PAB] to conduct disciplinary hearings and discipline officers of the City of Rochester Police Department are determined and declared to be invalid, void and unenforceable." The court also sua sponte "referred [Local Law No. 2] back to the Rochester City Council to be reconciled and made compliant with New York State law and the Rochester City Charter."
The City Council now appeals. Neither the Mayor nor the City itself has appealed, however.
DISCUSSION
I
Two preliminary technical issues require some brief discussion. 
First, although this case was filed as a hybrid CPLR article 78 proceeding and declaratory judgment action, it is actually proper only as a declaratory judgment action (see Parker v Town of Alexandria, 138 AD3d 1467, 1467-1468 [4th Dept 2016]; Centerville's Concerned Citizens v Town Bd. of Town of Centerville, 56 AD3d 1129, 1129 [4th Dept 2008]). The gravamen of plaintiffs' lawsuit is that Local Law No. 2 is invalid in certain key aspects, and "it is well established that an article 78 proceeding is not the proper vehicle to test the validity of a legislative enactment" (Kamhi v Town of Yorktown, 141 AD2d 607, 608 [2d Dept 1988], affd 74 NY2d 423 [1989]).
Second, plaintiffs' decision to name the City Council as a party in this action obviates any need to examine whether that legislative body has the capacity to take an appeal for the purpose [*2]of defending a law that the executive branch has abandoned (see generally Virginia House of Delegates v Bethune-Hill, — US &mdash, 139 S Ct 1945, 1949-1956 [2019]; United States v Windsor, 570 US 744, 755-763 [2013]; I.N.S. v Chadha, 462 US 919, 939-940 [1983]; cf. Hernandez v State of New York, 173 AD3d 105, 110 [3d Dept 2019]). After all, capacity is a waivable objection that does not implicate our subject matter jurisdiction to entertain an appeal, and by naming the City Council as a party to this action, plaintiffs waived any challenge to that body's capacity to appeal from the resulting judgment that now aggrieves it (see Matter of County of Chautauqua v Shah, 126 AD3d 1317, 1320 [4th Dept 2015], affd 28 NY3d 244 [2016]).
We now reach the merits of plaintiffs' challenges to Local Law No. 2.
II
The Legislature re-chartered the City of Rochester in 1907 (see L 1907, ch 755). At that time, all municipalities — with the possible exception of the City of Albany — were subject to Dillon's Rule, the well-known common law principle by which, among other things, municipalities could not vary their structure or powers without State approval (see 1894 NY Const, art III, §§ 26, 27; art X, § 2; art XII,
§§ 1, 2; see generally Olesen v Town of Hurley, 691 NW2d 324, 328 n 6 [SD 2004] ["Judge Foster Dillon was a late nineteenth century Iowa jurist and government law scholar. The appellation 'Dillon's Rule' is derived from two cases he authored"]; David C. Hammack, Reflections on the Creation of the Greater City of New York and Its First Charter, 1898, 42 NY L Sch L Rev 693, 698-700 [1998])[FN1]. As a result of an amendment to the State Constitution in 1923 and the Legislature's subsequent adoption of the former City Home Rule Law (L 1924, ch 363), Dillon's Rule was relaxed somewhat to allow cities to amend their own charters in certain respects without State approval (see generally Matter of Warden [Police Dept. of City of Newburgh], 300 NY 39, 41-43 [1949]; Johnson v Etkin, 279 NY 1, 4-5 [1938]; Van Orman v Slade, 126 AD2d 282, 284-285 [3d Dept 1987]). And in 1964, the voters amended the State Constitution "to expressly repudiate[] the prevailing . . . Dillon's rule" (City of New York v State of New York, 76 NY2d 479, 491 n 4 [1990]). Consequently, municipalities may now adopt local laws — including charter revisions — governing "the removal of [their] employees, subject to the requirement of consistency with the Constitution and general laws" (Matter of Gizzo v Town of Mamaroneck, 36 AD3d 162, 165 [2d Dept 2006], lv denied 8 NY3d 806 [2007]; see NY Const, art IX, § 2 [c] [ii] [1]; Municipal Home Rule Law § 10 [1] [i], [ii] [a] [1]; [c] [1]; see generally Municipal Home Rule Law § 2 [5] [defining "general law" as any "state statute which in terms and in effect applies alike to all [municipalities or types thereof]"]).
As enacted by the Legislature, the Rochester City Charter of 1907 granted the Commissioner of Public Safety the sole and exclusive power to discipline police officers and firefighters (see L 1907, ch 755,
§ 330 [entitled "charges and trials of policemen and firemen"]). The Commissioner's power in that regard was "final and conclusive, and not subject to review by any court" (id.). Upon the relaxation and eventual abolition of Dillon's Rule in New York, section 330 of the City Charter was altered in several minor respects between 1925 and 1963. Among these alterations was the division of section 330 into separate yet substantively identical provisions for police officers (section 8A-7) and firefighters (section 8B-6).
In 1967, the Legislature ushered in a new era of collective bargaining for public employees by enacting the Taylor Law (Civil Service Law art 14; see L 1967, ch 392). In describing the purpose of the Taylor Law, the Legislature declared that "the public policy of the state [was] best effectuated by . . . granting to public employees the right of organization and [*3]representation" (Civil Service Law § 200 [a]). Accordingly, subject to certain exceptions not relevant here, municipalities became "required to negotiate collectively with [the various unions] in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees" (§ 204 [2] [emphasis added]). There is no dispute that section 204 (2) constitutes a "general law" within the meaning of Municipal Home Rule Law § 2 (5).
The Court of Appeals has repeatedly held that police discipline falls presumptively within the broad category of "terms and conditions of [public] employment" for which collective bargaining is mandatory under Civil Service Law § 204 (2) (see Matter of City of Schenectady v New York State Pub. Empl. Relations Bd., 30 NY3d 109, 115 [2017] [hereinafter, "Schenectady"]; Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., 6 NY3d 563, 571, 574 [2006] [hereinafter, "PBA"]; see also Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836], 19 NY3d 1066, 1069 [2012] [hereinafter, "Wallkill"]). The high Court has recognized, however, a certain "kind" of legislation that "overcomes the presumption in favor of collective bargaining where police discipline is concerned" (PBA, 6 NY3d at 574), to wit: "preexisting laws that expressly provide for control of police discipline" by local officials without regard to collective bargaining (Schenectady, 30 NY3d at 114, citing PBA, 6 NY3d at 573). Such "preexisting laws" are "grandfathered," held the Court of Appeals; consequently, in any municipality with such a "grandfathered" law, the subject of police discipline is exempt from the presumption of collective bargaining that would otherwise prevail by virtue of Civil Service Law § 204 (2) (PBA, 6 NY3d at 573; see Schenectady, 30 NY3d at 114; Wallkill, 19 NY3d at 1069). To fashion this exception from section 204 (2) for preexisting police-discipline legislation, the PBA court borrowed from a similarly worded exception in section 76 (4), which says that "nothing contained in section seventy-five or seventy-six of [the Civil Service Law, which prescribe detailed default rules for certain public-employee disciplinary hearings] shall be construed to repeal or modify any general, special or local law or charter provision relating to the removal or suspension of officers" (see PBA, 6 NY3d at 573).
Importantly, and contrary to the parties' assumptions in this case, the question before the Court of Appeals in PBA, Wallkill, and Schenectady was not whether the respective municipality's refusal to collectively bargain over police discipline violated either Civil Service Law §§ 75 or 76 in and of themselves. Rather, the question in PBA and its progeny was whether the respective municipality's refusal to collectively bargain over police discipline violated the statutory obligation to collectively bargain over the "terms and conditions of
[public] employment" as set forth in section 204 (2). To decide that question, the Court of Appeals weighed the "tension between the strong and sweeping policy of the State to support collective bargaining under the Taylor Law . . . and a competing policy . . . favoring strong disciplinary authority for those in charge of police forces" (PBA, 6 NY3d at 571 [internal quotation marks omitted]), and it ultimately crafted a judicial compromise: police discipline would be subject to collective bargaining, except in municipalities with a preexisting law that vested local officials with the sole and exclusive power to discipline police officers (see id. at 571-575).
With this compromise, the Court of Appeals gave force to the default-preference for collective bargaining enshrined in the Taylor Law without displacing any preexisting law concerning police discipline that remained in force (see Schenectady, 30 NY3d at 117). True, the collective bargaining exemption announced in PBA was inspired by a similarly-worded limitation in Civil Service Law § 76 (4) that tempered the immediate impact of the default rules specified in sections 75 and 76, but the PBA court was not directly applying either section 75 or 76 to resolve the parties' dispute concerning the mandatory scope of collective bargaining under section 204 (2). In short, while section 76 (4) was the juridical muse for the section 204 (2) exception created by the Court of Appeals in PBA, it is section 204 (2) — not section 75 or 76 — that demarcates the analytical parameters within which this case must primarily be decided.
III
Here, all parties agree that, when the Taylor Law was adopted in 1967, the 1907 City Charter provision constituted a "preexisting law" on the subject of police discipline in Rochester [*4]within the meaning of PBA. Thus, at the time of its adoption, the Taylor Law neither displaced Rochester's then-existing practices for disciplining police officers nor required collective bargaining of that topic going forward.
That is not the end of the story, however, for there is an important caveat to the preexisting-law exception created by PBA: the preexisting law in question must be " 'in force' " when the municipality refuses to collectively bargain over police discipline (Schenectady, 30 NY3d at 115, quoting PBA, 6 NY3d at 571-572; see Wallkill, 19 NY3d at 1069). The "in force" requirement was satisfied in Schenectady, PBA, and Wallkill, but it is not satisfied here. And that is because the 1907 City Charter provision governing police discipline in Rochester was formally repealed by the City Council in 1985 — almost 20 years after the Taylor Law was adopted and almost 35 years before PAB was created (see Local Law No. 2 [1985] of the City of Rochester § 1 [City Charter "is hereby amended by repealing Section 8A-7, Charges and trials of policemen, for the reason that this subject matter is covered by the Civil Service Law"]). Consequently, the 1985 City Council explicitly surrendered its grandfathered prerogative to exempt police discipline from collective bargaining.
Thus, because the 1907 City Charter provision was not "in force" when the voters approved Local Law No. 2 in 2019, we hold that Rochester no longer qualifies for the PBA-created exception to mandatory collective bargaining over police discipline. And without the PBA exception, the challenged Local Law No. 2 necessarily falls insofar as it takes police discipline out of collective bargaining because, in that respect, it conflicts with the general law mandating collective bargaining over police discipline (see Civil Service Law
§ 204 [2]; see generally Municipal Home Rule Law § 10 [1] [i], [ii] [no local law, including a charter revision, may contravene any "general law"]). As the Court of Appeals has explained, "a local law is inconsistent [with the general law] where local laws prohibit what would be permissible under State law" (Eric M. Berman, P.C. v City of New York, 25 NY3d 684, 690 [2015] [internal quotation marks omitted]), and by creating a permanent administrative apparatus for disciplining police officers that is impervious to alteration or modification at the bargaining table, Local Law No. 2 necessarily and structurally prohibits something that, ever since the 1985 repeal of the 1907 City Charter provision, is statutorily mandated for the City of Rochester: collective bargaining of police discipline. The court therefore properly invalidated Local Law No. 2 insofar as it imbues PAB with disciplinary authority over Rochester police officers without regard to collective bargaining.
IV
We reject the City Council's contrary arguments.
First, the City Council says that police discipline is not and has never been a proper subject of collective bargaining in Rochester given the Legislature's decision, in the 1907 City Charter, to effectively exempt police discipline from collective bargaining. As such, the City Council reasons, the 1907 City Charter provision governing police discipline remains "in force" because the 1985 City Council had no power to repeal it. We disagree. By their incremental relaxation and eventual abolition of Dillon's Rule, the voters and the Legislature collectively transferred the power to amend city charters from the Legislature to the cities themselves, subject only (in substantive matters) to the requirement of conformity with the State Constitution and the general laws (see NY Const, art IX, § 2 [c] [ii] [1]; Municipal Home Rule Law § 10 [1] [i], [ii]; Gizzo, 36 AD3d at 165). That is precisely what the City Council did in 1985: it exercised its home rule powers to overturn the Legislature's 1907 policy determination. And given the Legislature's 1967 enactment of the Taylor Law and its presumption of collective bargaining for police discipline, it defies reason to suggest — as the City Council does now — that the 1985 repeal of the 1907 provision somehow contravened any general law in effect in 1985. Quite the opposite, the 1985 repeal actually aligned Rochester with the modern-day Legislature's policy favoring collective bargaining of police discipline.
Nothing in the Schenectady, Wallkill, or PBA decisions even remotely suggests that a grandfathered law concerning police discipline must be forever fossilized in the municipal codebooks, never to be abrogated by the municipality in the valid exercise of its home rule powers. To the contrary, the Schenectady decision specifically emphasized that the qualifying preexisting law in that case had not been repealed, and it even contrasted the continued [*5]effectiveness of Schenectady's local law with the Legislature's repeal of a similar preexisting statute that had limited collective bargaining for State Police officers (see 30 NY3d at 116-118, citing L 2001, ch 587)[FN2]. Schenectady thus clearly contemplates the potential repeal of a preexisting law concerning police discipline that would have otherwise qualified for the PBA-created exception to mandatory collective bargaining. Indeed, by insisting on the eternal sanctity of the policy choices of the 1907 Legislature, the City Council embraces the very specter of dead-hand control that its brief repeatedly decries.
The City Council's reasoning on this point suffers from an additional flaw. If, as the current City Council insists, the Legislature's 1907 policy determination to commit police discipline to the exclusive discretion of the executive branch was so important and fundamental that it barred the 1985 City Council from subjecting police discipline to collective bargaining, then the paramount import of that 1907 policy would also logically bar the current City Council from transferring the executive's latent disciplinary authority to an unelected body like PAB. Simply stated, the 1907 City Charter provision cannot logically preclude collective bargaining of police discipline yet simultaneously permit an independent board to fire police officers over the objection of the executive's appointed police chief. The very rationale that the City Council deploys to invalidate the 1985 repeal would equally doom its own 2019 legislation. Thus, by winning the battle over the validity of the 1985 repeal, the City Council would ineluctably lose the war over the validity of the 2019 local law.
Second, there is absolutely no record support for the current City Council's speculation that its 1985 predecessor unwittingly repealed the 1907 City Charter provision while laboring under a comprehensive misapprehension of the Taylor Law and its workings. And even if the current City Council has correctly conjured its predecessor's motivations and underlying suppositions back in 1985, they would be irrelevant. What matters is that the 1907 City Charter provision was explicitly and unambiguously repealed in 1985, and "no amount of legislative history can overcome that fact" (National Labor Relations Bd. v Alaris Health at Castle Hill, 811 Fed Appx 782, 786-787 [3d Cir 2020]; see Triple A Intl., Inc. v Democratic Republic of Congo, 721 F3d 415, 418 [6th Cir 2013], cert denied 571 US 1024 [2013] ["no amount of legislative history can rescue an interpretation that does as much damage to the enacted text as [the plaintiff's] interpretation does here"]).
Third, citing the general proposition that a legislative body that "violently disagrees with its predecessor . . . may modify or abolish its predecessor's acts" (Farrington v Pinckney, 1 NY2d 74, 82 [1956] [internal quotation marks omitted]), the City Council insists upon its absolute right to undo the 1985 repeal of the 1907 City Charter provision. As a generic platitude of democratic governance, of course, the City Council's position is unassailable. But the City Council's undisputed right to, in essence, repeal the 1985 repeal does not correspondingly confer that body with unfettered power to enact whatever it wants in place of the now-repealed 1985 provision. To the contrary, in designing a replacement for the 1985 provision, the City Council was barred from enacting anything in contravention of a "general law" (Municipal Home Rule Law § 10 [1] [i], [ii]), and that includes the Taylor Law's mandate of collective bargaining for police discipline in the absence of a contrary preexisting law that remains in force (see Civil Service Law § 204 [2]). Put simply, the City Council's newfound preference for the 1907 legislative judgment does not allow it to resurrect that policy in defiance of the currently-prevailing legislative judgment.
We recognize that the current City Council is frustrated to have fewer policy options at its disposal than did its predecessor in 1985. That frustration, to some extent, is understandable. But it is also inherent in the nature of grandfathering. By abandoning a grandfathered right or privilege, the abandoner necessarily deprives its successors of the ability to revive or reclaim that right or privilege at some future point. As Maine's highest court aptly explained, once "lost . . . [a] grandfathered status . . . could not be revived" (Day v Town of Phippsburg, 110 A3d 645, 649 [Me 2015]). Not every legislative decision can be undone, and the City Council's 1985 decision to repeal the 1907 provision simply cannot be undone in the manner attempted in 2019. If the [*6]City Council wants to turn back the clock on its 1985 decision and grant final authority over police discipline to an entity like PAB without a conforming collective bargaining agreement, then it must go to Albany and persuade either the Court of Appeals to revisit its policy compromise in PBA or the Legislature to recede from its robust preference for collective bargaining. Neither of those options, of course, are within the ken of the Appellate Division.
V
Two final issues require brief discussion.
First, we reject Supreme Court's distinct conclusion that transferring disciplinary power from the police chief to PAB violates an officer's right under Civil Service Law § 75 (2) and Unconsolidated Laws § 891 to a hearing before "the officer or body having the power to remove the [officer] . . . or by a deputy" thereof. The court reasoned that, because Local Law No. 2 places the onus upon the police chief to implement and enforce PAB's disciplinary determinations, the
chief technically remains the official "having the power to remove the [charged officer]" such that disciplinary hearings must still be conducted before the chief or a deputy pursuant to sections 75 (2) and 891. That reasoning, however, is unduly pedantic. The whole purpose of Local Law No. 2 was to transfer the power to remove police officers from the police chief to PAB. Consistent with that goal, the local law requires the police chief to implement PAB's decreed penalty in each and every case without reduction of any kind. That PAB's members are not also tasked with personally escorting a fired officer out of the precinct does not change the fact that the termination decision was made by PAB, not by the police chief. The court's determination on this point is akin to saying that, in a capital case, the jury is not the "body having the power" to impose the death penalty simply because the jurors are not personally tasked with executing the condemned prisoner. Thus, because Local Law No. 2 makes PAB the primary body "having the power to remove the [officer]," PAB's designation as the disciplinary hearing panel does not violate sections 75 (2) and 891 [FN3]. We acknowledge, of course, that our holding on this tangential point is of limited practical consequence given Local Law No. 2's fundamental incompatibility with the Taylor Law.
Second, we agree with the City Council that the court erred by referring Local Law No. 2 "back to the Rochester City Council to be reconciled and made compliant with New York State law and the Rochester City Charter." That referral was improper, and plaintiffs do not suggest otherwise. The court's judicial function was limited to determining whether and to what extent Local Law No. 2 was void as inconsistent with the general law. The court did just that, and its role ended at that point. The court had no power to "refer" the challenged law back to the legislative body that enacted it for amendment or correction (see generally People v LaValle, 3 NY3d 88, 131 [2004], citing People v Gersewitz, 294 NY 163, 169 [1945], cert dismissed 326 US 687 [1945]; cf. Christine Bateup, Reassessing the Dialogic Possibilities of Weak-Form Bills of Rights, 32 Hastings Intl & Comp L Rev 529, 543-546 [2009] [discussing the declare-incompatible and refer-back model of statutory judicial review in the United Kingdom]). If the City Council wishes to amend Local Law No. 2 in response to a judicial ruling, it is more than capable of doing so on its own initiative. Accordingly, the judgment appealed from should be
modified by vacating the fourth decretal paragraph and, as so modified, affirmed.
Entered: June 11, 2021
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: The City of Albany was perhaps not subject to all facets of Dillon's Rule as of 1907 because, at that time, the capital city still operated under a pre-statehood charter granted in 1686 by His Excellency Governor Thomas Dongan that derived not from modern notions of popular consent but rather from the dei gratia rex prerogative of the Lord Proprietor, His Majesty King James II (see 1894 NY Const, art I, § 17; Aikin v Western R.R. Corp., 20 NY 370, 374-376 [1859]; see generally People ex rel. Howell v Jessup, 160 NY 249, 258-264 [1899]).

Footnote 2: Each of the Second Department cases cited by the City Council in footnote 7 of its opening brief, we note, featured a "preexisting law" that remained in force at all relevant times. 

Footnote 3: The police chief's theoretical power to fire an officer notwithstanding PAB's imposition of a lesser penalty does not change the fact that, under the administrative scheme established by Local Law No. 2, PAB is the primary "body having the power to remove" an officer for purposes of sections 75 (2) and 891. At most, sections 75 (2) and 891 might entitle an officer to another hearing before the chief or a deputy chief in the event that the chief sought to terminate that officer notwithstanding PAB's imposition of a lesser penalty.