6 N.Y.3d 563 (2006)
848 N.E.2d 448
815 N.Y.S.2d 1
In the Matter Of PATROLMEN'S BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., Appellant,
v.
NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.
In the Matter of TOWN OF ORANGETOWN et al., Respondents,
v.
ORANGETOWN POLICEMEN'S BENEVOLENT ASSOCIATION et al., Appellants.
Court of Appeals of the State of New York.
Argued February 8, 2006.
Decided March 28, 2006.
*564 Kaye Scholer LLP, New York City (Peter M. Fishbein, Jay W. Waks, John D. Geelan and Christine A. Neagle of counsel), Gleason, Dunn, Walsh & O'Shea, Albany (Ronald G. Dunn of counsel), and Office of the Patrolmen's Benevolent Association of City of New York, Inc. General Counsel, New York City (Michael T. Murray of counsel), for appellant in the first above-entitled proceeding.
*565 Sandra M. Nathan, Albany, and William L. Busler for New York State Public Employment Relations Board, respondent in the first above-entitled proceeding.
*566 Michael A. Cardozo, Corporation Counsel, New York City (Edward F.X. Hart, Leonard Koerner and Spencer Fisher of counsel), for City of New York, respondent in the first above-entitled proceeding.
Donna M.C. Giliberto, Albany, for New York State Conference *567 of Mayors and Municipal Officials, amicus curiae in the first above-entitled proceeding.
Patterson, Belknap, Webb & Tyler, LLP, New York City (Anthony P. Coles and Walter M. Luers of counsel), for Sergeants Benevolent Association of the City of New York, amicus curiae in the first above-entitled proceeding.
Certilman Balin Adler & Hyman, LLP, East Meadow (Wayne J. Schaefer and Michael C. Axelrod of counsel), for Police Benevolent Association of the New York State Troopers, Inc. and another, amici curiae in the first above-entitled proceeding.
*568 Bunyan & Baumgartner, LLP, Blauvelt (Joseph P. Baumgartner and Richard P. Bunyan of counsel), for appellants in the second above-entitled proceeding.
*569 Keane & Beane, P.C., White Plains (Lance H. Klein and Edward J. Phillips of counsel), for respondents in the second above-entitled proceeding.
Donna M.C. Giliberto, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae in the second above-entitled proceeding.
Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur; Chief Judge KAYE taking no part. *578

*570 OPINION OF THE COURT
R.S. SMITH, J.
We hold that police discipline may not be a subject of collective bargaining under the Taylor Law when the Legislature has expressly committed disciplinary authority over a police department to local officials.

Facts and Procedural History

Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.
The Patrolmen's Benevolent Association of the City of New York (NYCPBA) seeks to annul a decision by the Public Employment Relations Board (PERB) that the City need not bargain with the NYCPBA over five subjects, even though those subjects had been dealt with in an expired collective bargaining agreement. The expired agreement had provided: (1) that police officers being questioned in a departmental investigation would have up to four hours to confer with counsel; (2) that certain guidelines for interrogation of police officers would remain unchanged; (3) that a "joint subcommittee" would "develop procedures" to assure the timely resolution of disciplinary charges; (4) that a pilot program would be established to refer disciplinary matters to an agency outside the police department; and (5) that employees charged but not found guilty could petition to have the records of disciplinary proceedings expunged. PERB found that all these provisions concerned "prohibited subjects of bargaining."
Supreme Court upheld PERB's decision on the ground that the New York City Charter and Administrative Code, as interpreted in Matter of City of New York v MacDonald (201 AD2d 258, 259 [1st Dept 1994]), required that the discipline of New York City police officers be left to the discretion of the Police Commissioner. The Appellate Division affirmed, as do we.

*571 Matter of Town of Orangetown v Orangetown Policemen's Benevolent Assn.

The Town of Orangetown and its Town Board brought this proceeding against the Orangetown Policemen's Benevolent Association (Orangetown PBA) and a police officer, seeking to stay arbitration of a dispute between the Town and the officer over a disciplinary issue. The Orangetown PBA and the officer had sought arbitration pursuant to article 15 of the collective bargaining agreement between the Town and the union, which prescribed detailed procedures, culminating in an arbitration, for any "dispute concerning the discipline or discharge" of an Orangetown police officer. Supreme Court granted the application to stay arbitration. Relying on Matter of Rockland County Patrolmen's Benevolent Assn. v Town of Clarkstown (149 AD2d 516 [2d Dept 1989]) and Matter of Town of Greenburgh (Police Assn. of Town of Greenburgh) (94 AD2d 771, 772 [2d Dept 1983]), Supreme Court held that article 15 is invalid under the Rockland County Police Act, because that act commits police discipline to the discretion of local authorities. The Appellate Division affirmed.
The specific issue that gave rise to this case is now moot, because the Town and the officer have settled their differences, but the Town and the Orangetown PBA continue to disagree about article 15's validity, and both sides have asked us to decide that question. We therefore convert the proceeding to a declaratory judgment action and declare that, as the courts below held, article 15 is invalid.

Discussion
We confront, not for the first time, a tension between the "strong and sweeping policy of the State to support collective bargaining under the Taylor Law" (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778 [1976]) and a competing policy  here, the policy favoring strong disciplinary authority for those in charge of police forces. We have held that the policy of the Taylor Law prevails, and collective bargaining is required, where no legislation specifically commits police discipline to the discretion of local officials (Matter of Auburn Police Local 195, Council 82, Am. Fedn. of State, County & Mun. Empls., AFL-CIO v Helsby, 46 NY2d 1034 [1979], affg for reasons stated below 62 AD2d 12 [3d Dept 1978]). Since Auburn was decided, however, the First, Second and Third departments of the Appellate Division have held that, where such legislation *572 is in force, the policy favoring control over the police prevails, and collective bargaining over disciplinary matters is prohibited (MacDonald, 201 AD2d at 259; Rockland County Patrolmen's Benevolent Assn., 149 AD2d at 517; Town of Greenburgh, 94 AD2d at 771-772; Matter of City of Mount Vernon v Cuevas, 289 AD2d 674, 675-676 [3d Dept 2001]). We decide today that these Appellate Division holdings were correct.
The Taylor Law (Civil Service Law art 14) requires collective bargaining over all "terms and conditions of employment":
"Where an employee organization has been certified or recognized . . . the appropriate public employer shall be, and hereby is, required to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees" (Civil Service Law § 204 [2]).
We have often stressed the importance of this policy, and have made clear that "the presumption . . . that all terms and conditions of employment are subject to mandatory bargaining" cannot easily be overcome (Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd., 95 NY2d 73, 79 [2000]; see also, e.g., Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd., 75 NY2d 660, 667-668 [1990]; Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v Associated Teachers of Huntington, 30 NY2d 122, 129 [1972]).
On the other hand, we have held that some subjects are excluded from collective bargaining as a matter of policy, even where no statute explicitly says so. Thus, we have held that local boards of education may not surrender, in collective bargaining agreements, their ultimate responsibility for deciding on teacher tenure (Cohoes, 40 NY2d at 778), or their right to inspect teachers' personnel files (Board of Educ., Great Neck Union Free School Dist. v Areman, 41 NY2d 527 [1977]). We have held that a police department may not be required to bargain over the imposition of certain requirements on officers receiving benefits following injuries in the line of duty (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 483 [1995]), and that a city may not surrender, in collective bargaining, its statutory right to choose among police officers seeking promotion (Matter of Buffalo Police Benevolent Assn. [City of Buffalo], 4 NY3d 660 *573 [2005]). And we have held that public policy bars enforcement of a provision in a collective bargaining agreement that would limit the power of the New York City Department of Investigation to interrogate city employees in a criminal investigation (Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO, 95 NY2d 273 [2000]).
In none of these cases did a statute exclude a subject from collective bargaining in so many words. In each case, however, we found a public policy strong enough to warrant such an exclusion. As we explained in Cohoes, the scope of collective bargaining may be limited by "`plain and clear, rather than express, prohibitions in the statute or decisional law'" or "in some instances[,] by `[p]ublic policy . . . whether explicit or implicit in statute or decisional law, or in neither'" (40 NY2d at 778, quoting Syracuse Teachers Assn. v Board of Educ., Syracuse City School Dist., 35 NY2d 743, 744 [1974], and Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.], 37 NY2d 614, 616-617 [1975]).
Is there a public policy strong enough to justify excluding police discipline from collective bargaining? It might be thought this question could be answered yes or no, but the relevant statutes and case law are not so simple. In general, the procedures for disciplining public employees, including police officers, are governed by Civil Service Law §§ 75 and 76, which provide for a hearing and an appeal. In Auburn, a case involving police discipline, the Appellate Division rejected the argument that these statutes should be interpreted to prohibit collective bargaining agreements "that would supplement, modify or replace" their provisions (62 AD2d at 15), and we adopted the Appellate Division's opinion (46 NY2d at 1035-1036). Thus, where Civil Service Law §§ 75 and 76 apply, police discipline may be the subject of collective bargaining.
But Civil Service Law § 76 (4) says that sections 75 and 76 shall not "be construed to repeal or modify" preexisting laws, and among the laws thus grandfathered are several that, in contrast to sections 75 and 76, provide expressly for the control of police discipline by local officials in certain communities. Such laws are applicable in the City of New York and in the Town of Orangetown, and are at the center of these two cases.
Section 434 (a) of the New York City Charter provides: "The [police] commissioner shall have cognizance and control of the government, administration, disposition and discipline of the *574 department, and of the police force of the department" (emphasis added). New York City Administrative Code § 14-115 (a) provides that, in cases of police misconduct: "The commissioner shall have power, in his or her discretion, . . . to punish the offending party." Though these two provisions are now New York City legislation, both were originally enacted as state statutes; the Charter provision was adopted by the State Legislature in 1897 (L 1897, ch 378, enacting NY City Charter § 271), and the Code provision in 1873 (L 1873, ch 335, §§ 41, 55). Thus, they reflect the policy of the State that police discipline in New York City is subject to the Commissioner's authority.
The Legislature has provided similarly for the discipline of town and village police forces, including those in Rockland County, where Orangetown is located. Section 7 of the Rockland County Police Act (L 1936, ch 526), similar in its wording to more general statutes, Town Law § 155 and Village Law § 8-804, provides in part:
"The town board shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of such police department. Except as otherwise provided by law, no member or members of such police department shall be fined, reprimanded, removed or dismissed until written charges shall have been examined, heard and investigated in such manner or by such procedure, practice, examination and investigation as the board, by rules and regulations from time to time, may prescribe."
Thus, the Legislature has committed police discipline in Orangetown to the "power and authority" of the Orangetown Town Board.
Appellate Division cases  one of which we have referred to favorably  have consistently held that legislation of this kind overcomes the presumption in favor of collective bargaining where police discipline is concerned. Thus, in 1983 the Appellate Division, Second Department held that police discipline in the Town of Greenburgh was not subject to collective bargaining; it distinguished Auburn on the ground that discipline in Greenburgh was committed to the authority of the Town Board or Board of Police Commissioners by the Westchester County *575 Police Act (Town of Greenburgh, 94 AD2d at 771-772). In 1989, the same Court reached a similar conclusion under the Rockland County Police Act, one of the laws at issue here (Rockland County Patrolmen's Benevolent Assn., 149 AD2d at 517). In 1994, the Appellate Division, First Department held that the other laws at issue here  section 434 of the New York City Charter and section 14-115 of the New York City Administrative Code  excluded police discipline in New York City from collective bargaining. The Court held that the legislation "discloses a legislative intent and public policy to leave the disciplining of police officers . . . to the discretion of the Police Commissioner" (MacDonald, 201 AD2d at 259). We quoted these words with approval in Matter of Montella v Bratton (93 NY2d 424, 430 [1999]) where we held, in a case not involving collective bargaining, that police discipline in New York City is not subject to the procedures prescribed in Civil Service Law §§ 75 and 76. Finally, in 2001, the Appellate Division, Third Department, endorsed the decisions of the First and Second Departments in Town of Greenburgh, Rockland County Patrolmen's Benevolent Assn. and MacDonald, holding that the Charter of the City of Mount Vernon, like the legislation involved in the other Appellate Division cases, removed police disciplinary procedures from the scope of collective bargaining (Mount Vernon, 289 AD2d at 675-676).
The NYCPBA and the Orangetown PBA argue that this line of Appellate Division cases is wrong. In this they are supported by PERB, which, although it is bound by and has followed the Appellate Division decisions, now urges us to reject them. This is not a case, however, in which we defer to PERB's judgment. The primary issue here is not the application of the Taylor Law to particular facts, an area in which PERB is entitled to deference (Matter of Poughkeepsie Professional Firefighters' Assn., Local 596, IAFF, AFL-CIO-CLC v New York State Pub. Empl. Relations Bd., 6 NY3d 514 [2006] [decided today]; Matter of West Irondequoit Teachers Assn. v Helsby, 35 NY2d 46, 50-51 [1974]), but the relative weight to be given to competing policies, including those reflected in the New York City Charter, the New York City Administrative Code, and the Rockland County Police Act  legislation not within PERB's area of expertise (see Schenectady Police Benevolent Assn., 85 NY2d at 485). We think the Appellate Division decisions evaluated these policies correctly.
While the Taylor Law policy favoring collective bargaining is a strong one, so is the policy favoring the authority of public officials *576 over the police. As long ago as 1888, we emphasized the quasi-military nature of a police force, and said that "a question pertaining solely to the general government and discipline of the force . . . must, from the nature of things, rest wholly in the discretion of the commissioners" (People ex rel. Masterson v French, 110 NY 494, 499 [1888]). This sweeping statement must be qualified today; as Auburn demonstrates, the need for authority over police officers will sometimes yield to the claims of collective bargaining. But the public interest in preserving official authority over the police remains powerful. It was the basis for our holding, only last June, that the statutory right of a police commissioner to select "an officer to fill a position important to the safety of the community" may not be surrendered in a collective bargaining agreement (Buffalo Police Benevolent Assn., 4 NY3d at 664). The same policy has determined the result of other cases, including Matter of Silverman v McGuire (51 NY2d 228, 231-232 [1980]), where we rejected a resolution of a police disciplinary proceeding negotiated by a subordinate official, in light of "the sensitive nature of the work of the police department and the importance of maintaining both discipline and morale."
The New York City Charter and Administrative Code, and the Rockland County Police Act, state the policy favoring management authority over police disciplinary matters in clear terms. In New York City, the police commissioner "shall have cognizance and control of the . . . discipline of the department" (NY City Charter § 434 [a]) and "shall have power, in his or her discretion[,] . . . to punish [an] offending party" (Administrative Code of City of NY § 14-115 [a]). In Rockland County, the town board "shall have the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member or members of such police department" (Rockland County Police Act § 7). These legislative commands are to be obeyed even where the result is to limit the scope of collective bargaining. The issue is not, as the unions argue, whether these enactments were intended by their authors to create an exception to the Taylor Law; obviously they were not, since they were passed decades before the Taylor Law existed. The issue is whether these enactments express a policy so important that the policy favoring collective bargaining should give way, and we conclude that they do.
Accordingly, in Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd., the order *577 of the Appellate Division should be affirmed, with costs. In Matter of Town of Orangetown v Orangetown Policemen's Benevolent Assn., the proceeding should be converted to a declaratory judgment action, and the order of the Appellate Division modified to declare that article 15 of the collective bargaining agreement is invalid, and the order should otherwise be affirmed, with costs to the Town of Orangetown and the Town Board of the Town of Orangetown.
In Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.: Order affirmed, with costs.
In Matter of Town of Orangetown v Orangetown Policemen's Benevolent Assn.: Order modified, etc.