■ In the Matter of COUNTY OF ERIE et al., Petitioners, v STATE OF NEW YORK PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents. [844 NYS2d 525]—

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Erie County [Kevin M. Dillon, J.], entered October 25, 2006) to review a determination of respondent State of New York Public Employment Relations Board. The determination, after a hearing, found that petitioners had violated Civil Service Law § 209-a (1) (d).

It is hereby ordered that the determination be and the same hereby is unanimously confirmed without costs, the petition is

dismissed and the counterclaims for enforcement of the order of respondent State of New York Public Employment Relations Board dated August 9, 2006 are granted.

Memorandum: This case arises out of four improper practice charges filed by the Civil Service Employees Association, Inc. (CSEA) and the Teamsters Local 264 (Teamsters) (collectively, respondents) alleging that petitioners had assigned employees to duties outside of their bargaining unit work.

On August 31, 2000, the Erie County Legislature passed a local law transferring control of the Erie County Correctional Facility (ECCF) to the Erie County Sheriff. Prior to the enactment of that local law, ECCF had been under the control of the Erie County Executive. With the exception of a portion of the facility known as "The Annex," ECCF housed sentenced defendants who were exclusively guarded by correction officers represented by CSEA. Both the Annex and the Erie County Holding Center (Holding Center), a separate correctional facility, were controlled by the Sheriff and housed presentenced defendants who were exclusively guarded by deputy sheriffs represented by the Teamsters. Those housing and guarding arrangements were continued after the enactment of the August 31, 2000 legislation.

In 2002 the State Commission of Correction (COC) determined that the Holding Center was overcrowded, in part because inmate housing assignments were determined primarily by the inmate's adjudication status. Both at that time and following a subsequent evaluation of the Holding Center in 2004, the COC directed the Sheriff to implement a single objective classification system for both facilities based upon the factors set forth in Correction Law § 500-b. The Sheriff's attempts to comply with that directive at ECCF resulted in the commingling of sentenced and presentenced defendants, so that sheriff's deputies were guarding sentenced defendants and correction officers were guarding presentenced defendants. As a consequence, respondents filed unfair labor practice charges alleging that petitioners had, without prior negotiation, transferred CSEA bargaining unit work to employees represented by the Teamsters and had transferred Teamsters bargaining unit work to employees represented by CSEA. Following an eight-day hearing that spanned approximately 2½ years, the Administrative Law Judge (ALJ) determined that petitioners had violated section 209-a (1) (d) of the Civil Service Law by transferring exclusive bargaining unit work to nonunit employees. Respondent State of New York Public Employment Relations Board (PERB) denied the exceptions filed by petitioners and affirmed the ALJ's decision.

Petitioners then commenced this CPLR article 78 proceeding, which was transferred to this Court pursuant to CPLR 7804 (g).

We reject the contention of petitioners that compliance with PERB's ruling would prevent them from implementing a single objective classification system for both facilities based upon the factors set forth in Correction Law § 500-b. PERB's ruling did not address the implementation or merits of the classification system required by COC. Rather, PERB's ruling addressed petitioners' failure to negotiate with respondents before transferring work assignments from one group of guards to the other as part of the implementation of the new classification system. The record contains testimony from witnesses at the hearing stating that it was possible to comply with COC's requirement of a single classification system based upon the factors set forth in Correction Law § 500-b while still taking the adjudication status of defendants into account as a subordinate consideration and thereby preserving the traditional demarcation between work assignments. Thus, PERB's determination that petitioners could have negotiated with respondents before transferring work assignments is supported by substantial evidence, i.e., "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]; *see generally Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 331 [2003]).

We reject the further contention of petitioners that the requirements of Correction Law § 500-b preempted their duty to negotiate with respondents before transferring work assignments. "Preemption, in the Taylor Law context, means that collective bargaining of terms and conditions of employment is prohibited because a plain and clear bar in statute or policy involving an important constitutional or statutory duty or responsibility leaves an agency with no discretion as to how an issue may be resolved" (*Matter of Newark Val. Cent. School Dist. v Public Empl. Relations Bd.*, 83 NY2d 315, 320 [internal quotation marks omitted]). There is no "plain and clear bar in statute or policy" prohibiting petitioners from negotiating with respondents concerning the effect that implementation of the new classification system would have upon the distribution of guarding duties (*id.*). Nor did COC's discussions with the Sheriff prevent negotiation. A COC witness testified at the hearing that COC was not concerned with whether correction officers or deputy sheriffs guarded presentenced or sentenced defendants, provided that an objective classification system based on the factors of Correction Law § 500-b was used.

Finally, petitioners contend that, because implementation of a classification system based on the factors set forth in Correction Law § 500-b relates to the mission of the Sheriff, PERB erred in determining that the new classification system was the subject of mandatory bargaining. We reject that contention. While policy decisions implementing the mission of a public employer are not subject to mandatory bargaining (*see Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 669-670 [1990]; *Matter of Lippman v Public Empl. Relations Bd.*, 296 AD2d 199, 208 [2002], *lv denied* 99 NY2d 503 [2002]), the decision to transfer guarding responsibilities does not constitute a policy decision implementing the Sheriff's mission to classify defendants pursuant to the classification system required by COC. Because a classification system based on the factors set forth in Correction Law § 500-b could be implemented without the transfer of any work assignments, PERB properly determined that any such transfer was a matter relating to the terms and conditions of employment (*see* Civil Service Law § 204 [2]; *see generally New York State Thruway Auth. v Cuevas*, 279 AD2d 851, 852-853 [2001]; *Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 251 AD2d 583 [1998], *lv denied* 92 NY2d 819 [1999]), and petitioners failed to rebut the presumption that the transfer of work assignments was subject to mandatory bargaining (*see Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 572 [2006]; *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73, 78-79 [2000], *rearg denied* 95 NY2d 849 [2000]). Present—Scudder, P.J., Martoche, Lunn, Peradotto and Green, JJ.