[972 NE2d 83, 948 NYS2d 842]

In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Appellant, v NEW YORK STATE PUBLIC EMPLOYMENT RELATIONS BOARD et al., Respondents.

Argued April 25, 2012; decided June 7, 2012

**APPEARANCES OF COUNSEL**

*Martin B. Schnabel, General Counsel for New York City Transit Authority*, Brooklyn (*Robert K. Drinan* and *Mariel A. Tanne* of counsel), for appellant.

*David P. Quinn*, Albany, for New York State Public Employment Relations Board, respondent.

*Cary Kane LLP*, New York City (*Nicholas Hanlon* and *Larry Cary* of counsel), for Transport Workers Union of America, Local 100, respondent.

MEMORANDUM.

The judgment of the Appellate Division should be affirmed, with costs.

In April 2000, the New York City Transit Authority (the NYCTA) unilaterally instituted a policy regarding dual employment. Under the policy, a NYCTA employee may engage in dual employment provided that it does not "interfere with the proper and effective discharge of the employee's duties with the [NYCTA]." As relevant here, the policy imposed particular restrictions on "employees in safety-sensitive titles," including bus operators, tower operators, train conductors, train operators and train dispatchers. Furthermore, the policy stated that department heads "may create and disseminate department-specific standards which may be more stringent than standards set forth [here], as warranted to assure the safety of the public and of [NYCTA] employees."

Effective May 1, 2006, the NYCTA adopted "more stringent" standards for the dual employment of train conductors, train operators and tower operators. Two months later, the Transport Workers Union, Local 100 (the TWU), representing several employees of the NYCTA, filed an improper practice charge, alleging that the NYCTA violated Civil Service Law § 209-a (1) (d) by failing to negotiate with the Union before implementing these stricter standards. Acknowledging that it did not negotiate with the TWU, the NYCTA asserted that it had no obligation to do so because the decision to impose more restrictive standards was a management prerogative since it related to its mission of providing a safe system of public transit.

An Administrative Law Judge (the ALJ) conducted a hearing in February 2007. At the outset of the hearing, the ALJ noted that the parties stipulated to the introduction of certain joint exhibits. One of those exhibits was a letter from the NYCTA Office of Labor Relations indicating that the NYCTA "did not rely upon any safety studies" when it implemented the more restrictive dual employment standards. However, the NYCTA's Chief Transportation Officer, Kevin O'Connell, testified at the hearing that the purpose of the new standards was to ensure that those in safety-sensitive positions were "getting sufficient rest." During his testimony, O'Connell referred to an unidentified report from the National Transportation Safety Board determining that employee fatigue affects safety and recounted that a collision occurred in 1995 when a NYCTA employee fell asleep at the control.

The ALJ agreed with the NYCTA and dismissed the TWU's improper labor practice charge. The TWU filed a statement of exceptions with the Public Employment Relations Board (PERB). In June 2009, PERB reversed the ALJ's determination, rescinded the May 2006 dual employment standards and directed the NYCTA to make whole certain affected employees. The NYCTA then commenced this CPLR article 78 proceeding in Supreme Court. Following transfer of the proceeding to the Appellate Division, the Court confirmed the determination (78 AD3d 1184 [2d Dept 2010]). We granted the NYCTA leave to appeal (17 NY3d 711 [2011]).

It is well settled that "[t]he Taylor Law (Civil Service Law art 14) requires collective bargaining over all 'terms and conditions of employment' " (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 572 [2006], quoting Civil Service Law § 204 [2]). Where a public employee alleges that a public employer has failed to negotiate the terms and conditions of employment—an improper employer practice (*see* Civil Service Law § 209-a [1] [d]), PERB has exclusive jurisdiction to resolve the dispute between the parties (*see* Civil Service Law § 205 [5] [d]; *see also Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.*, 44 NY2d 336, 342 [1978]). We "have made clear that 'the presumption . . . that all terms and conditions of employment are subject to mandatory bargaining' cannot easily be overcome" (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc.*, 6 NY3d at 572, quoting *Matter of City of Watertown v State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73, 79 [2000]). However, "certain decisions of an employer, though not without impact upon its employees, may not be deemed mandatorily negotiable terms and conditions of employment . . . because they are inherently and fundamentally policy decisions relating to the primary mission of the public employer" (*Matter of Board of Educ. of City School Dist. of City of N.Y. v New York State Pub. Empl. Relations Bd.*, 75 NY2d 660, 669 [1990] [internal quotation marks omitted]; *see also Matter of County of Erie v State of N.Y. Pub. Empl. Relations Bd.*, 12 NY3d 72, 78 [2009]).

Here, the NYCTA urges us to hold that its implementation of more stringent dual employment standards was mission-related and, therefore, not subject to collective bargaining. It is indisputable that the NYCTA's core mission is to provide a safe system of public transit (*see* Public Authorities Law § 1202 [1]; § 1204 [15]). Although we need not "defer to PERB's judgment"

(*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc.*, 6 NY3d at 575) on whether an employer's unilateral policy decision relates to its primary mission, the record in this case is inadequate to support the NYCTA's argument that the dual employment standards at issue were in furtherance of its core mission of public safety. As noted earlier, the NYCTA did not rely on particular safety studies when it imposed these new standards. Moreover, the NYCTA did not explain why it chose to impose the more restrictive dual employment standards on certain safety-sensitive employees—train conductors, train operators and tower operators—while exempting others—bus operators and train dispatchers—who share similar job functions. Simply put, on the limited record before us, there is an insufficient basis to disturb PERB's determination.

We have considered the NYCTA's remaining arguments and find them to be without merit.

SMITH, J. (dissenting). This case should be decided on the basis of the common-sense proposition that it is dangerous for people who do not get enough sleep to operate subway trains. The NYCTA should therefore be permitted to adopt unilaterally, without collective bargaining, the rule that is in issue here, requiring, in substance, that train operators and other employees in safety-sensitive jobs must, if they want to work at another job, have eight hours off excluding commuting time before they report to work for the NYCTA.

We have repeatedly recognized that certain subjects are so important to the public interest that they are exceptions to the general rule requiring public employers to bargain with employee representatives over the terms and conditions of employment (*e.g. Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774 [1976] [decisions on teacher tenure]; *Matter of City of New York v Uniformed Fire Officers Assn., Local 854, IAFF, AFL-CIO*, 95 NY2d 273 [2000] [criminal investigations of employee misconduct]; *Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563 [2006] [*PBA v PERB*] [police discipline]). Most recently, in *Matter of City of New York v Patrolmen's Benevolent Assn. of the City of N.Y., Inc.* (14 NY3d 46 [2009]), we held that the choice of a methodology for the drug screening of uniformed police officers was a management prerogative not subject to collective bargaining. The majority makes no attempt to distinguish any of these cases—to explain, for example, why somnolent subway drivers present a less serious threat to the public than

pot-smoking police officers. I would hold this case to be controlled by those I have cited.

The majority here faults the NYCTA for failing to put forward "particular safety studies" to support its new standards (majority mem at 880). But why are studies needed to demonstrate that an employee driving a train full of people should have eight full hours of rest between jobs? Why cannot that matter be left to the NYCTA's common-sense judgment? The majority finds "an insufficient basis to disturb PERB's determination" (*id.*), but an agency responsible for public employment relations should not be determining a question like this at all. Here, as in *PBA v PERB*, the issue is "the relative weight to be given to competing policies" (6 NY3d at 575)—in this case, the competing policies of protecting employees' bargaining rights and protecting the public safety. We, not PERB, should be determining that question, and should decide that the interest in public safety is the weightier one.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and READ concur; Judge SMITH dissents in an opinion in which Judge PIGOTT concurs; Judge JONES taking no part.

Judgment affirmed, with costs, in a memorandum.