[976 NYS2d 450]

In the Matter of LILLIAN ROBERTS, as Executive Director of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO, et al., Appellants, v NEW YORK CITY OFFICE OF COLLECTIVE BARGAINING et al., Respondents.

First Department, November 26, 2013

## APPEARANCES OF COUNSEL

*Mary J. O'Connell*, New York City (*Steven E. Sykes* of counsel), for appellants.

*John F. Wirenius*, and *Michael T. Fois*, New York City, for the New York City Office of Collective Bargaining, Board of Collective Bargaining and Marlene Gold, respondents.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Benjamin Welikson, Leonard Koerner* and *Paul T. Rephen* of counsel), for the City of New York, Mayor's Office of Labor Relations and the Fire Department of the City of New York, respondents.

## OPINION OF THE COURT

RICHTER, J.

This appeal raises the question of whether the New York City Fire Department's "zero tolerance" policy, requiring automatic termination of certain emergency medical services (EMS) employees who fail or refuse to provide a specimen for a drug test, should have been subject to mandatory collective bargaining. The New York City Board of Collective Bargaining (the Board) found that this issue was not required to be bargained, and unions representing the employees brought this CPLR article 78 proceeding. We now uphold the Board's decision because the New York City Charter provides that the discipline of these EMS employees is the sole province of the New York City Fire Commissioner, and because the Fire Department's determination of an appropriate penalty for illegal drug use relates to its primary mission of providing public safety.

In 1996, respondent Fire Department of the City of New York (FDNY) took over EMS functions from the New York City Health and Hospitals Corporation, and became the municipal provider of pre-hospital emergency medical treatment and transport for the City's 911 system. EMS personnel include paramedics and emergency medical technicians (EMTs) who respond to 911 calls, provide initial emergency medical assistance to sick or injured persons, and safely transport them to the hospital.

In June 1999, FDNY issued a written policy setting forth procedures for testing EMTs and paramedics (hereinafter EMS workers) suspected of being under the influence of intoxicating substances while on duty (the 1999 policy). The 1999 policy did not provide for any specific penalties for a positive drug test result, but merely stated that employees testing positive were to be served with appropriate departmental charges. Although the policy contained no penalty provisions, in practice, FDNY would not always terminate the employment of EMS workers who tested positive for drugs. Instead, some first-time offenders could avoid termination, in the discretion of FDNY on a case-by-case basis, if they sought counseling and treatment.

This practice changed in May 2007, when FDNY implemented a new alcohol and drug testing policy for EMS workers. The new policy imposes "zero tolerance" for illegal drug use, and provides that EMS workers who test positive for illegal drugs, or who refuse to provide a specimen, shall be terminated for a first offense (the termination provision). EMS workers with a drug problem who voluntarily come forward can avail themselves of counseling services without any disciplinary consequences.

Petitioners, who are union officials representing EMTs and paramedics, filed an improper practice petition alleging that FDNY violated the New York City Collective Bargaining Law (NYCCBL) (Administrative Code of City of NY § 12-301 et seq.) by unilaterally implementing the termination provision without first bargaining in good faith with the unions (see NYCCBL § 12-306 [a] [4]).[1] In their answer, FDNY and respondent City of New York maintained that the termination provision was not a substantive change in policy and, in any event, was not subject to mandatory collective bargaining. Respondent Board of Collec-

---

1. The petition also challenged several other aspects of the 2007 policy, none of which are at issue in this appeal.

tive Bargaining conducted a hearing at which petitioners and the City presented testimony and documentary evidence.

In a decision dated April 28, 2011, the Board denied petitioners' improper practice petition insofar as it challenged the termination provision.[2] The Board concluded that this provision constituted a change to the 1999 policy because it mandated termination upon a positive drug test or refusal to provide a specimen. The Board found that this deviated from the earlier policy, which allowed for some exercise of discretion in deciding whether offenders should be offered alternative dispositions, including counseling and rehabilitation. Nevertheless, the Board concluded that the implementation of the termination provision was within management's right to take disciplinary action against its employees, and thus was outside the scope of mandatory bargaining. Petitioners brought this article 78 proceeding challenging the Board's decision. The City and the Board each moved to dismiss the proceeding, and in a decision entered April 30, 2012, the motion court granted the motions. This appeal ensued.

It is well-settled that New York's Taylor Law (Civil Service Law § 200 *et seq.*) requires collective bargaining over all terms and conditions of employment (*Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 19 NY3d 876, 879 [2012]). Local governments are permitted to enact their own procedures governing labor relations as long as they are substantially equivalent to those set forth in the Taylor Law (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378, 382 [2001]). In the City of New York, the NYCCBL regulates the conduct of labor relations between the City and its employees. Consistent with the Taylor Law, the NYCCBL requires public employers and certified or designated employee organizations to bargain in good faith on wages, hours and working conditions (NYCCBL § 12-307 [a]).

There is no question that New York has a strong policy of supporting collective bargaining, and a presumption exists that all terms and conditions of employment are subject to mandatory bargaining (*Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.*, 6 NY3d 563, 571-572 [2006]). This presumption can be overcome, however, where there exists clear legislative intent to remove an issue from mandatory bargaining (*Matter of City of Watertown v*

---

2. Other aspects of the Board's decision are not the subject of this appeal.

*State of N.Y. Pub. Empl. Relations Bd.*, 95 NY2d 73, 79 [2000]). Indeed, "some subjects are excluded from collective bargaining as a matter of policy, even where no statute explicitly says so" (*Matter of Patrolmen's Benevolent Assn.*, 6 NY3d at 572).

For example, the Court of Appeals has repeatedly held that the policy favoring strong disciplinary authority for those in charge of police forces prevails over the Taylor Law where legislation has expressly committed such discipline to local officials. In *Matter of Patrolmen's Benevolent Assn.*, the police union challenged a decision by the Public Employment Relations Board that the City was not required to bargain over a number of disciplinary subjects. The Court held that the disciplinary matters at issue were a prohibited subject of collective bargaining because the legislature had vested disciplinary authority over police officers with the police commissioner (6 NY3d at 576).

Specifically, the Court relied on section 434 (a) of the New York City Charter, which provides that "[t]he [police] commissioner shall have cognizance and control of the . . . discipline of the department" (6 NY3d at 573-574).[3] The Court found that the Charter provision reflects a "powerful" policy favoring management authority over police discipline, "a policy so important that the policy favoring collective bargaining should give way" (*id.* at 576). Emphasizing the quasi-military nature of a police force, the Court concluded that questions of police discipline rest wholly in the discretion of the police commissioner (*id.*).

Several years later, in *Matter of City of New York v Patrolmen's Benevolent Assn. of the City of N.Y., Inc.* (14 NY3d 46 [2009]), the Court again relied on New York City Charter § 434 (a) to conclude that the triggers and methodology for testing city police officers for drugs are matters within the police commissioner's disciplinary authority and thus excluded from collective bargaining as a matter of policy (14 NY3d at 58-59; *see also Matter of Town of Wallkill v Civil Serv. Empls. Assn., Inc. [Local 1000, AFSCME, AFL-CIO, Town of Wallkill Police Dept. Unit, Orange County Local 836]*, 19 NY3d 1066 [2012] [upholding local law setting forth disciplinary procedures for police offi-

---

**3.** The Court also cited Administrative Code § 14-115 (a), which also governs police discipline. Although a similar provision covers fire department discipline (Administrative Code § 15-113), it is not clear whether that section applies to EMS workers or is limited to firefighters. Thus, respondents do not rely on that statute.

cers different from those provided for in the collective bargaining agreement because statute vested police discipline with the town]). The Court emphasized that deterring illegal drug use within the police department is a "crucial component of the Police Commissioner's responsibility to maintain discipline within the force" (14 NY3d at 59).

*Matter of Patrolmen's Benevolent Assn.* and *Matter of City of New York* mandate a conclusion that FDNY's implementation of a policy of terminating EMS workers after failing or refusing to take a drug test is not subject to collective bargaining. New York City Charter § 487 (a) gives the fire commissioner the "sole and exclusive power" to "perform all duties for the government, discipline, management, maintenance and direction of the fire department."[4] There is no discernable difference between this Charter provision and the parallel Charter provision governing police discipline. In fact, section 487 (a), which refers to "sole and exclusive power" over fire department discipline, is even more strongly worded than the section on police discipline, which refers to "cognizance and control" (*see Matter of Von Essen*, 4 NY3d at 223).

Moreover, the same policy concerns that guided the Court of Appeals' decisions in *Matter of Patrolmen's Benevolent Assn.*, and *Matter of City of New York* apply with equal force here. FDNY, like the police department, is a quasi-military organization (*Matter of Gallagher v City of New York*, 307 AD2d 76, 82 [1st Dept 2003], *lv denied* 1 NY3d 503 [2003]), demanding strict discipline of its workforce (*see Matter of Patrolmen's Benevolent Assn.*, 6 NY3d at 576). And the policy of deterring illegal drug use by EMS workers is just as crucial as the policy of preventing police officers from using prohibited drugs (*see Matter of City of New York*, 14 NY3d at 59). FDNY has a substantial and compelling interest in ensuring that workers responsible for the well-being and transportation of injured and sick citizens are free from the effects of illegal drugs.

The danger to patients, the public and other workers arising from EMS workers being under the influence of illegal drugs is amply supported by the record before the Board. The City presented expert testimony to support its conclusion that the use of illegal substances can substantially interfere with an EMS

---

4. Like the Charter provision governing police discipline, section 487 (a) predates the enactment of Civil Service Law §§ 75 and 76, and thus benefits from the grandfather provision of Civil Service Law § 76 (4) (*see Matter of Von Essen v New York City Civ. Serv. Commn.*, 4 NY3d 220, 224 [2005]).

worker's ability to perform critical safety-sensitive tasks. Other City witnesses explained how paramedics and EMTs are responsible for making split-second decisions about medical care, often in life-or-death situations, and must be fully alert while performing their jobs. Moreover, it is critical to ensure that EMS workers, who are in close proximity to medications, including controlled substances, do not themselves use illegal substances. And the risk of driving an ambulance at high speeds while under the influence of drugs needs no elaboration.

■ We find no merit to the argument raised by both petitioners and the Board that the applicability of City Charter § 487 (a) is unpreserved (*cf. Matter of Khan v New York State Dept. of Health*, 96 NY2d 879, 880 [2001] ["Judicial review of administrative determinations pursuant to CPLR article 78 is limited to questions of law"]). Although that particular statute was not cited at the administrative level, petitioners fully briefed the broader question of whether there exists statutory authority to remove FDNY's termination policy from the sphere of collective bargaining. And the Board's decision specifically cited to the Court of Appeals' decision in *Matter of City of New York*, which relies on an analogous Charter provision. Thus, the issue before us was fully preserved for our review (*see Blainey v Metro N. Commuter R.R.*, 99 AD3d 588, 590 [2012], *lv denied* 21 NY3d 859 [2013] [party's failure to cite a particular statute below does not preclude party from relying on that statute when arguing for the very same position on appeal]).

■ The Court of Appeals recently reiterated that a public employer cannot be compelled to bargain over "inherent[ ] and fundamental[ ] policy decisions relating to the primary mission of the public employer" (*Matter of New York City Tr. Auth.*, 19 NY3d at 879 [internal quotation marks omitted]; *see also Matter of County of Erie v State of N.Y. Pub. Empl. Relations Bd.*, 12 NY3d 72, 78 [2009]). FDNY's interest in ensuring that its EMS workers are drug-free directly relates to the primary mission of treating and providing transport for sick and injured citizens and ensuring that EMS workers do so safely. This Court of Appeals precedent provides further support for our conclusion that FDNY cannot be compelled to bargain over this fundamental public safety policy decision.

■ Petitioners unpersuasively argue that bargaining over the disciplinary penalty here is required by NYCCBL § 12-307 (b). Under that provision, a public employer has the right to "take disciplinary action," and decisions on those matters are manage-

ment prerogatives that are not within the scope of collective bargaining. However, this provision also states that "questions concerning the practical impact that [such] decisions . . . have on terms and conditions of employment, including, but not limited to, questions of workload, staffing and employee safety, are within the scope of collective bargaining" (*id.*). In some cases, a particular matter may be both a management prerogative and also have an impact on a term or condition of employment, requiring a balancing of the interests involved (*see Matter of Levitt v Board of Collective Bargaining of City of N.Y., Off. of Collective Bargaining*, 79 NY2d 120, 127 [1992]).

To the extent the Board proposes that such a balancing test is appropriate here, we disagree. Because the determination of the appropriate penalty for drug use by EMS workers goes directly to FDNY's core mission and involves public safety, and because specific legislation vests disciplinary authority over such matters with the fire commissioner, this issue is removed altogether from the sphere of collective bargaining (*see Matter of New York City Tr. Auth.*; *Matter of Town of Wallkill*; *Matter of City of New York*; *Matter of County of Erie*; *Matter of Patrolmen's Benevolent Assn.*).

■ Even if the policy here were subject to a balancing test, FDNY's interest in ensuring its EMS workers are drug-free far outweighs any interest these employees may have in requiring that a different penalty structure be implemented. Petitioners argue that FDNY's policy interferes with EMS workers' procedural due process rights to have an administrative law judge or arbitrator determine the appropriate penalty. These employees' due process rights, however, are not abrogated completely by the challenged policy because they still are entitled to a hearing on any charges arising from drug testing, and to appeal any finding of guilt. Petitioners offer no other specific employee interests that would be subject to balancing. Indeed, it is their primary position that penalties for specific offenses must always be collectively bargained, a position that is at odds with both the City Charter and controlling Court of Appeals precedent.

Accordingly, the judgment of the Supreme Court, New York County (Robert E. Torres, J.), entered April 30, 2012, denying the petition to annul respondent Board of Collective Bargaining's determination, dated April 28, 2011, that respondent Fire Department of the City of New York's "zero tolerance" policy, requiring automatic termination of EMS workers who fail or re-

fuse to provide a specimen for a drug test, was not subject to mandatory collective bargaining, and dismissing the proceeding brought pursuant to CPLR article 78, should be affirmed, without costs.

FRIEDMAN, J.P., MOSKOWITZ, MANZANET-DANIELS and GISCHE, JJ., concur.

Judgment, Supreme Court, New York County, entered April 30, 2012, affirmed, without costs.