================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 93
In the Matter of City of
Schenectady,
          Appellant,
        v.
New York State Public Employment
Relations Board et al.,
          Respondents.

          Christopher Langlois, for appellant.
          David P. Quinn, for respondent New York State Public
Employment Relations Board.
          Michael P. Ravalli, for respondent Schenectady Police
Benevolent Association.

WILSON, J.:

          The City of Schenectady brought this CPLR article 78

proceeding to review a determination of the New York State Public

Employment Relations Board (PERB).  PERB determined that the City

committed an improper employer practice by enacting General Order

0-43, which adopted new police disciplinary procedures different

- 1 -

from those contained in the parties' expired collective
bargaining agreement.  Supreme Court confirmed the determination
and dismissed the City's petition, concluding that article 14 of
the Civil Service Law (hereinafter the Taylor Law) superseded the
provisions of the Second Class Cities Law regarding police
discipline.  The Appellate Division affirmed (136 AD3d 1086 [3d
Dept 2016]).  This case is controlled by our prior decisions in
Matter of Patrolmen's Benevolent Assn. of City of N.Y., Inc. v
New York State Pub. Empl. Relations Bd. (6 NY3d 563 [2006]) and
Matter of Town of Wallkill v Civil Servs. Empls. Assn., Inc. (19
NY3d 1066 [2012]), which held that the statutory grants of local
control over police discipline in New York City and Wallkill --
substantively similar to the statutory provisions relevant here
-- rendered discipline a prohibited subject for collective
bargaining.

                                I.

          Before 1894, the Constitution required specific state
legislation to charter a city or to amend a city's charter.  As a
result of the Constitutional Convention of 1894, the Constitution
was amended to designate cities by population as cities of the
first, second and third classes.  The legislature enacted general
laws applicable to each of the three classes, and the
Constitution prevented the legislature from changing those laws
unless the change affected all cities within a class.

          In 1906, the Legislature enacted the Second Class

Cities Law, which provided a standard charter for all cities of the second class.  The parties agree that Schenectady was, and still is, a city of the second class.  The Second Class Cities Law contains detailed provisions governing the procedures for police discipline.  For example, "[t]he commissioner of public safety shall have cognizance, jurisdiction, supervision and control of the government, administration, disposition and discipline of the police department" (Second Class Cities Law § 131).  In addition, the commissioner:

> "is authorized and empowered to make, adopt, promulgate and enforce reasonable rules, orders and regulations for the . . . discipline . . . of [police] officers. . . , and for the hearing, examination, investigation, trial and determination of charges made or prepared against any officer . . . and may, in his discretion, punish any such officer or member found guilty thereof; but no officer . . . shall be removed or otherwise punished for any other cause, nor until specific charges in writing have been preferred against and served upon him, and he shall have been found guilty thereof, after reasonable notice and upon due trial before said commissioner"

(id. § 133; see also id. §§ 135, 137).

The Taylor Law, which went into effect in 1967, states, "[w]here an employee organization has been certified or recognized . . . the appropriate public employer shall be, and hereby is, required to negotiate collectively with such employee organization in the determination of, and administration of grievances arising under, the terms and conditions of employment of the public employees" (Civil Service Law § 204 [2]).  As we

have recognized, the Taylor Law represents a "strong and sweeping policy of the State to support collective bargaining" (see Cohoes City Sch. Dist. v Cohoes Teachers Ass'n, 40 NY2d 774, 778 [1976]).

                              II.

        Schenectady asks us to reverse the holding of the Appellate Division that the relevant provisions of the Second Class Cities Law were superseded by the enactment of the Taylor Law, and thus collective bargaining applies to police discipline in Schenectady.  This is not the first time we have addressed the effect of the Taylor Law on police disciplinary procedures.  In Matter of Patrolmen's Benevolent Assn., we determined that although Civil Service Law §§ 75 and 76 generally govern police disciplinary procedures, preexisting laws that expressly provide for control of police discipline were "grandfathered" under Civil Service Law 76 (4), which provides that nothing in sections 75 and 76 "shall be construed to repeal or modify any general, special or local" laws or charters (6 NY3d at 573).  We then confronted "[the] tension between the strong and sweeping policy of the State to support collective bargaining under the Taylor Law . . . and a competing policy -- here, the policy favoring strong disciplinary authority for those in charge of police forces" (id. at 571).  There, we held that the policy favoring collective bargaining must give way, and police discipline was a prohibited subject of bargaining (id. at 576).  We harmonized

that result with <u>Matter of Auburn Police Local 195, Council 82,</u>
<u>Am. Fedn. of State, County & Mun. Empls., AFL-CIO v Helsby</u> (62
AD2d 12 [3d Dept 1978], <u>affd</u> <u>for</u> <u>reasons</u> <u>stated</u> <u>below</u> 46 NY2d
1034 [1979]), by noting that the Taylor Law prevails where "no
legislation specifically commits police discipline to the
discretion of local officials" (6 NY3d at 571).  However, "where
such legislation is in force, the policy favoring control over
the police prevails, and collective bargaining over disciplinary
matters is prohibited" (<u>id.</u> at 572).  In <u>Matter of Town of</u>
<u>Wallkill</u>, we extended <u>Matter of Patrolmen's Benevolent Assn.</u> to a
local law regarding police discipline, where the local law was
adopted pursuant to authority granted by Town Law § 155, itself a
general law enacted prior to Civil Service Law §§ 75 and 76 (19
NY3d at 1069).

     The specific commitments of police discipline in <u>Matter</u>
<u>of Patrolmen's Benevolent Assn.</u> and <u>Matter of Town of Wallkill</u>
resolve the question at issue here: "Is there a public policy
strong enough to justify excluding police discipline from
collective bargaining?" (6 NY3d at 573).  In <u>Matter of</u>
<u>Patrolmen's Benevolent Assn.,</u> we answered in the affirmative
where the New York City Charter and Administrative Code gave the
police commissioner "cognizance and control over the . . .
discipline of the department" and the authority "to punish [an]
offending party" (<u>id.</u> at 573-574).  In <u>Matter of Town of</u>
<u>Wallkill</u>, we found <u>Matter of Patrolmen's Benevolent Assn.</u>

dispositive where the Town Law committed to the Town "the power and authority to adopt and make rules and regulations for the examination, hearing, investigation and determination of charges, made or preferred against any member of members of such police department," and where Wallkill had enacted a local law vesting disciplinary power with the Town Board (19 NY3d at 1066).  In the present case, the Second Class Cities Law, enacted prior to Civil Service Law §§ 75 and 76, specifically commits police discipline to the commissioner and details the relevant procedures, as described above.[1]  The Taylor Law's general command regarding collective bargaining is not sufficient to displace the more specific authority granted by the Second Class Cities Law.  Thus, our decisions in Matter of Patrolmen's Benevolent Assn. and Matter of Town of Wallkill control, and police discipline is a prohibited subject of bargaining in Schenectady.

PERB attempts to distinguish the present case by noting that section 4 of the Second Class Cities Law contains a supersession clause, which states that a provision applies "until such provision is superseded pursuant to the municipal home rule law, was superseded pursuant to the former city home rule law or is or was otherwise changed, repealed or superseded pursuant to law."  PERB reads the supersession clause as evidencing the

_____

[1] Subsequent changes to Schenectady's form of government have eliminated the office of the commissioner and transferred that office's powers and responsibilities to others, which is irrelevant for the purpose of our decision in this case.

legislature's "statutorily planned obsolescence" for the Second
Class Cities Law.  The Appellate Division distinguished Matter of
Patrolmen's Benevolent Assn. and Matter of Town of Wallkill on
that same basis (City of Schenectady v New York State Pub. Empl.
Relations Bd., 136 AD3d 1086, 1089 [3rd Dept 2016]).  However, we
reject the notion that the supersession clause demonstrates the
legislature's intent that the Second Class Cities Law was
expected to be ephemeral.  The Second Class Cities Law's
supersession clause does nothing more than affirm that the Second
Class Cities Law was intended to remain in force unless it is
changed or repealed pursuant to law, and does not distinguish the
present case from Matter of Patrolmen's Benevolent Assn. and
Matter of Town of Wallkill.[2]  Indeed, article IX, § 3 (b) of the
New York State Constitution contains the identical language: "The
provisions of this article shall not affect any existing valid
provisions of acts of the legislature or of local legislation and

---

[2] Certain of the laws at issue in those cases included
similar language.  Section 7 of the Rockland County Police Act,
considered in Matter of Patrolmen's Benevolent Assn., authorized
town boards in Rockland County to hear and determine disciplinary
charges against members of the police department in accordance
with its own rules and regulations "[e]xcept as otherwise
provided by law."  Similarly, Town Law § 155, considered by this
Court in Matter of Town of Wallkill, provided for the discipline
of town police officers in accordance with rules and regulations
prescribed by the town board, "[e]xcept as otherwise provided by
law."  Although we did not address that language in either case,
the existence of such language did not alter the outcome.  There
is no significant distinction between the phrase "except as
otherwise provided by law" and the phrase "changed, repealed[,]
or superseded pursuant to law" contained in Second Class Cities
Law § 4 that would justify a different result here.

such provisions shall continue in force until repealed, amended, modified or superseded in accordance with the provisions of this constitution."

The Second Class Cities Law has not been expressly repealed or superseded by the legislature nor was it implicitly repealed by the enactment of the Taylor Law in 1967.  "The repeal of a statute by implication is not favored by law, for when the legislature intends to repeal an act it usually says so expressly" (Matter of Tiffany, 179 NY 455, 457 [1904]; see Alweis v Evans, 69 NY2d 199, 204 [1987]).  "Generally, a statute is deemed impliedly repealed by another statute only if the two are in such conflict that it is impossible to give some effect to both.  If a reasonable field of operation can be found for each statute, that construction should be adopted" (Alweis, 69 NY2d at 204).  The Second Class Cities Law and the Taylor Law are not irreconcilable.  Article 9 of the Second Class Cities Law governs disciplinary procedures for police officers in cities of the second class, whereas the Taylor Law generally requires public employers to negotiate but does not specifically require police disciplinary procedures to be a mandatory subject of collective bargaining.  There is no express statutory conflict between the two laws; the only conflict is in the policies that they represent, and this Court has already resolved that policy conflict in favor of local control over police discipline (see Matter of Patrolmen's Benevolent Assn., 6 NY3d at 573; Matter of

Town of Wallkill, 19 NY3d at 1069).

                              III.

          Respondents' additional arguments are also

unpersuasive.  The Schenectady Patrolmen's Benevolent Association

argues that Schenectady's own course of dealing proves that the

Civil Service Law -- rather than the Second Class Cities Law --

applies to police discipline, and that because of Schenectady's

position in previous proceedings, Schenectady should be

judicially estopped from arguing that the Civil Service Law does

not apply.  However, the proceedings and "course of dealing"

referenced all took place prior to 2006, when we decided Matter

of Patrolmen's Benevolent Assn.  As Schenectady notes, "[d]uring

that period of time, the City and the PBA . . . were operating

under the belief -- albeit, a mistaken belief -- that the City

could lawfully negotiate" and enter into agreements that modified

the Second Class Cities Law by incorporating provisions of the

Civil Service Law.  In fact, it was shortly after our decision in

Matter of Patrolmen's Benevolent Assn. that Schenectady changed

course and issued a press release on June 4, 2007, announcing

that the "disciplinary action process within the police

department [would] undergo a significant change effective

immediately."

          PERB argues that an amendment to the Civil Service Law

regarding state troopers supports its interpretation.  In 2001,

the legislature amended Civil Service Law § 209 (4) (e) to delete

the exclusion for collective bargaining of disciplinary procedures regarding state troopers.  The supporting memorandum states: "Local police officers and Firefighters currently are afforded full binding arbitration (i.e. compensatory and non-compensatory issues are subject to binding arbitration).  The legislation would simply grant State Police Officers equal treatment with respect to their local counterparts" (L. 2001, c 587, Memorandum in Support of Bill No. A. 8589).  The 2001 amendment does not alter our conclusion, because it has no bearing on what the legislative intent was in 1906 (when the legislature passed the Second Class Cities Law) or 1967 (when the legislature adopted the Taylor Law).  Moreover, the statement that state troopers would be given "equal treatment to their local counterparts" provides no guidance here, because it is quite clear, from the different results in Matter of Patrolmen's Benevolent Assn., Matter of Town of Wallkill, and Matter of Auburn Police, that some local counterparts have the right to bargain about police discipline, and some do not.  Respondents' remaining arguments are not properly before us (see Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]).

Accordingly, the order of the Appellate Division should be reversed, with costs, the petition granted and the determination of respondent New York State Public Employment Relations Board annulled.

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *

Order reversed, with costs, petition granted and determination of
respondent New York State Public Employment Relations Board
annulled.  Opinion by Judge Wilson.  Chief Judge DiFiore and
Judges Rivera, Stein, Fahey, Garcia and Feinman concur.

Decided October 17, 2017